## *In re* LANGELL.

1. INJUNCTION—EQUITY—CONTEMPT PROCEEDINGS.

In contempt proceedings for the violation of an injunction against picketing by striking laborers, the order restraining members of a labor union from interfering with the employees of complainant, by way of threats, intimidation, violence, or from congregating or loitering about the complainant's premises, or from in any manner interfering with the free access to complainant's premises, was valid.[1]

2. SAME—STRIKES—VIOLATION OF WRIT—CONTEMPT.

Where the members of a labor organization were enjoined from picketing, loitering near the premises of the employer, or interfering with those who continued to work, respondent, who stationed himself opposite one of the entrances of the factory grounds while employees were passing and entering, was guilty of contempt.

3. STRIKES AND LOCK-OUTS—PICKETING—EQUITY.

There may be a moral intimidation by strikers, which is illegal, and peaceable picketing, unaccompanied by threats, abusive language or violence, may be restrained by the court of chancery.[2]

KUHN, OSTRANDER, and BIRD, JJ., dissenting.

Certiorari to Ingham; Collingwood, J. Submitted November 20, 1912. (Docket No. 120.) Decided January 5, 1914.

Harry Langell was adjudged guilty of contempt of court. Affirmed.

*C. P. Black* and *S. B. Roe,* for appellant.

*Raudabaugh & Person (Cummins & Nichols,* of counsel), for respondent circuit judge.

[1] On the question of injunction against strikes, see note in 28 L. R. A. 464.

[2] For authorities on the law as to picketing, see note in 4 L. R. A. (N. S.) 302.

MCALVAY, C. J. From an order made by respondent in the case of the Seager Engine Works, complainant, against the International Molders' Union No. 225, the petitioner Langell and others, members of said union, defendants, then pending in the circuit court for the county of Ingham, in chancery, adjudging petitioner guilty of contempt of court in violating the terms of an injunction issued in said cause, petitioner seeks by a writ of certiorari to review said contempt proceedings. The said cause was not at issue, and this record does not contain a copy of the bill of complaint, which was filed July 5, 1912, or the showing made for issuing the injunction in question. The petition in these proceedings, however, give a sufficient résumé of the bill to show it charged that complainant, in the manufacture of engines at its foundry and plant in Lansing, Mich., employed a large number of men; that on May 18, 1912, many of these employees, including petitioner, being members of this molders' union, went on a strike and, acting in concert, had been guilty of illegal acts with intent to injure the business of complainant and compel it to accede to their demands as to a scale of wages and hours of work and by acts of violence towards its employees had intimidated them and caused many of them, who desired to do so, to refrain from working for complainant and picketed its premises for the purpose of intimidating its employees and injuring its business, thereby causing its employees to refrain from work; that such picketing and other unlawful conduct and violence had continued for a long time before the filing of its bill of complaint, and such picketing was then being maintained continuously about its premises, and intimidated its employees and others from coming to work or transacting business with it.

The said injunction restrained all of the defendants, including petitioner, as follows:

"*(a)* From in any manner interfering with the employees of the complainant    *    *    *    by way of threats, personal violence, intimidation, or any other unlawful means calculated or intended to prevent such persons from entering or continuing in the employment of the complainant or calculated or intended to induce any such person or persons to leave the employment of the complainant.

"*(b)* From congregating or loitering about or in the neighborhood of the premises of the complainant with intent to interfere with the employees of complainant or from picketing said premises or the approaches thereto, or from in any manner interfering with the employees of complainant    *    *    *    or from in any manner interfering with or obstructing the business or trade of complainant.

"*(c)* From in any manner interfering with the free access of employees of complainant to complainant's premises in the city of Lansing and their place of work, and from in any manner interfering with the free return of said employees to their place of business or to their homes or elsewhere."

Copies of the restraining order were, on July 5th, duly served upon the defendants, including the petitioner in these proceedings. On July 8th following, the petitioner, who resided about two miles from complainant's premises, at 5:30 o'clock in the morning, stationed himself in the highway directly opposite to one of the entrances to complainant's premises and remained there while its employees were passing and crossing the street to enter complainant's premises to go to work. Three or four other members of the molders' union also were present in the vicinity standing 50 feet or more from petitioner. They said nothing to the workmen as they passed and made no physical attempt to interfere with them. They were standing at or about the same places occupied by pickets on the preceding Saturday and at other times, when petitioner and other strikers were present as pickets, and some of them hooted and called "scab" at the workmen entering complainant's plant.

On July 9th complainant filed its petition in said cause, asking for an order against petitioner and five others to show cause why they should not be punished as for a contempt for a violation and disobedience of the restraining order. The order to show cause was granted and duly served. The matter in due course came on to be heard before the respondent, Hon. Charles B. Collingwood, circuit judge. All of the evidence taken on such hearing, together with the petition and supporting affidavits thereto attached, and the order to show cause, the answer of the respondents thereto, is contained in the record returned to this court.

The contentions of petitioner which require consideration are: That the court had no jurisdiction to issue the restraining order against picketing; and that there was no evidence in the case tending to show a violation of the restraining order by petitioner in any respect. This court has held that a circuit court, in chancery, has jurisdiction to issue an injunction restraining interference by labor organizations, and the members of the same, during a strike, with the rights of an employer by picketing his premises. *Beck* v. *Protective Union*, 118 Mich. 497 (77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 394) ; *Ideal Manfg. Co.* v. *Wayne Circuit Judge*, 139 Mich. 92 (102 N. W. 372). The first contention, therefore, requires no further consideration.

The principal dispute in the case is as to whether there was any evidence tending to show that petitioner wilfully and knowingly disobeyed and violated the terms of the restraining order and to support the finding of the court that the acts and conduct of petitioner, as disclosed by the evidence, constituted picketing and was a wilful violation of the order in question.

From our examination of all of the evidence in the record, we are satisfied that there was evidence in the

case tending to support the finding of the circuit judge. The testimony of petitioner shows that he was a person having some authority in the molders' union; that he understood that the restraining order prohibited picketing and that in his opinion the court had no authority to issue such an order; and that if any one went there, without saying anything to the employees or making any disturbance, it would not be punishable. It is clear, from his testimony, that he went there because he thought that he could do it with more discretion than the ordinary members; that he went there wilfully and in defiance of the order, under the impression that a silent picketing was not unlawful. It appears from the evidence that he had been active and present on former occasions when there was open interference with the employees. It is urged that because petitioner stationed himself at this place and said nothing and did no overt act of interference that his acts, if found to be picketing, were lawful. Such a contention is supported by many authorities. The later and more reasonable rule, however, holds that all picketing is illegal.

"The doctrine that there may be a moral intimidation which is illegal, announced by the Supreme Court of Massachusetts, was among the first judicial steps taken in this country toward overturning the rule permitting peaceable picketing * * * and was a forerunner of the later rule that there can be no such thing as peaceable picketing, and consequently that all picketing is illegal." 24 Cyc. p. 836, citing *Vegelahn* v. *Guntner,* 167 Mass. 92 (44 N. E. 1077, 35 L. R. A. 722, 57 Am. St. Rep. 443) ; *Franklin Union* v. *People,* 220 Ill. 355 (77 N. E. 176, 4 L. R. A. [N. S.] 1001, 110 Am. St. Rep. 248) ; *Atchison, etc., R. Co.* v. *Gee* (C. C.), 139 Fed. 582; *Beck* v. *Protective Union, supra.*

This court has repeatedly held that it will not consider mere irregularities, technicalities, or matters of practice upon certiorari. The other matters pre-

sented by petitioner, being within these decisions, require no consideration.

The proceedings are affirmed.

BROOKE, STONE, MOORE, and STEERE, JJ., concurred with McALVAY, C. J.

KUHN, J. *(dissenting)*. After a careful reading of the record in this case, I am not convinced that the petitioner should have been found guilty of contempt. The circuit judge found the following:

"It appearing from the evidence taken upon said hearing that said Harry Langell was formerly a workman at the Seager Engine Works, and that he was a member of the molders' union, and that a copy of the said restraining order had been served upon him; that on the morning of the 8th day of July, 1912, before 6 o'clock in the morning, and while the workmen were entering the employment of said Seager Engine Works, he (the said Harry Langell) did place himself near the entrance of said works for the purpose of watching the said workmen to determine among other things how many were members of the union; that he (the said Harry Langell) stood near the entrance of said works at that time in the morning for the purpose of watching and annoying said workmen, who were attempting to work at said works, against the wishes of said molders' union; that such conduct on the part of said Harry Langell constituted and constitutes an intimidation of the employees of said Seager Engine Works and an interference calculated and intended to annoy and to prevent such persons from entering the employment of said Seager Engine Works; that such conduct on the part of said Harry Langell constituted and constitutes picketing; and that such watching and such annoyance and such interference and such picketing was done by said Harry Langell in wilful violation of said order lawfully issued out of this court on the 5th day of July, 1912."

In the case of *Beck* v. *Protective Union,* 118 Mich. 497, 520 (77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421), in defining a picket, this court said:

"As applied to cases of this character, the lexicographers thus define the word 'picket:' 'A body of men belonging to a trades' union sent to watch and annoy men working in a shop not belonging to the union, or against which a strike is in progress.' Cent. Dict.; Webst. Dict. The word originally had no such meaning. This definition is the result of what has been done under it and the common application that has been made of it."

It has also been defined as "relays of guards in front of a factory or the place of business of the employer for the purpose of watching who should enter or leave the same." *Cumberland Glass Manfg. Co.* v. *Glass Bottle Blowers' Ass'n,* 59 N. J. Eq. 49 (46 Atl. 208). Also "as the establishment and maintenance of an organized espionage upon the works and upon those going to and from them." *Otis Steel Co.* v. *Local Union* (C. C.), 110 Fed. 698. Under these definitions, it is necessary, in order to have picketing, to have a deliberate, organized action on the part of at least more than one person. No organized action is shown by this record. This petitioner went on the street of his own motion. He was not a part of a body of men sent to watch and annoy, within the definition in the *Beck Case.* He was only in the immediate vicinity of the plant for a few minutes. He interfered with no one; made no threats. I find nothing in the record to warrant the finding that he annoyed the workmen; in fact, the workmen who were sworn testified that he did not talk to them nor interfere with them in any way.

The order of the circuit judge finding the petitioner guilty of criminal contempt should be vacated and set aside, and the petitioner discharged.

OSTRANDER and BIRD, JJ., concurred with KUHN, J.