BOOK TOWER GARAGE, INC., *v.* LOCAL NO. 415, INTERNATIONAL UNION, U. A. W. A. (C. I. O.).

1. MASTER AND SERVANT—PICKETING—COMMON LAW.
   Any form of picketing was abhorrent to the common law.

2. SAME—ADVERTISING LABOR DISPUTE.
   Peaceful means of advertising a labor dispute is permissible.

3. SAME—DEFINITION OF PICKET.
   A picket is a person posted by a labor organization at an approach to the place of work affected by a strike to ascertain the workmen going and coming and to persuade or otherwise influence them to quit working there, and the term no longer connotes annoyance or covert and unspoken threats to employees.

4. SAME—PEACEFUL PICKETING—LEGISLATURE—SUPREME COURT OF THE UNITED STATES.
   Peaceful picketing having been upheld by the supreme court of the United States as an exercise of the right of freedom of speech guaranteed by the Federal Constitution, such right will not be denied because the State legislature has failed to enact a statute permitting it.

5. SAME—PEACEFUL PICKETING.
   Peaceful picketing is within the right to make known the facts of a labor dispute and is lawful.

6. CONSTITUTIONAL LAW—LIBERTY OF SPEECH AND PRESS—STATE ABRIDGMENT.
   The liberty of speech and press is a part of the fundamental personal rights and liberties secured from State abridgment by the Fourteenth Amendment to the Constitution of the United States and is also secured by the Constitution of this State (Const. 1908, art. 2, § 4).

7. SAME—STATE COURTS.
   It is the duty of the State courts as well as the Federal courts to guard and enforce every right secured by the Constitution of the United States as that Constitution is the supreme law of the land (U. S. Const. art. 6, § 2).

8. COURTS—SUPREME COURT OF THE UNITED STATES.
   The controlling interpretation of Federal law rests with the supreme court of the United States.

9. Injunction—Modification of Order—Parties—Peaceful Pick-
   eting.

   In suit by garage to enjoin picketing conducted by defendant
   union near plaintiff's place of business as well as at a
   nearby hotel, order of Supreme Court modifying trial court's
   order permitting one picket at the hotel is withdrawn where
   hotel is not a party to suit and order permitting peaceful
   picketing was proper.

Appeal from Wayne; Nichol (Henry G.), J.   Sub-
mitted April 9, 1940.   (Calendar No. 41,094.)   De-
cided December 10, 1940.

Bill by Book Tower Garage, Inc., a Michigan cor-
poration, against Local No. 415, International
Union, United Automobile Workers of America, and
others to restrain picketing of plaintiff's premises
and of the Book Cadillac Hotel.  Injunction denied.
Plaintiff reviews by appeal in nature of mandamus.
Writ denied.

*Milburn & Semmes (Edward T. Goodrich,* of coun-
sel), for plaintiff.

*Maurice Sugar (Jack N. Tucker* and *Louis Rosen-
zweig, of counsel),* for defendants.

Butzel, J.   We granted leave to appeal in the
nature of mandamus to review an interlocutory
order denying plaintiff's application for a tempo-
rary injunction to restrain defendants from peace-
ful picketing to publicize a labor dispute.

Plaintiff owns a large downtown garage on State
street near Washington boulevard in the city of
Detroit.   The Book Cadillac hotel is located on
Washington boulevard, a little south of State street.
A dispute arose between plaintiff and some. of its
employees because of plaintiff's refusal to negotiate
a closed shop agreement with defendant union.

After serving notice of intention to strike, pursuant to Act No. 176, § 9, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8628–9, Stat. Ann. 1940 Cum. Supp. § 17.454[9]), defendant called a strike and stationed a line of pickets in front of one of the entrances to plaintiff's garage and at an entrance of the Book Cadillac hotel. Plaintiff filed a bill of complaint seeking an injunction against picketing on plaintiff's property or the vicinity thereof, and from picketing the premises of any person with whom plaintiff does business. A temporary injunction issued in accordance with the prayer of the bill, but was later modified to permit peaceful picketing by the maintenance of six pickets on each side of plaintiff's premises and one picket in front of the Book Cadillac hotel. The order appealed from by plaintiff provides that defendants may not interfere with plaintiff's employees or persons who desire to enter the employ of plaintiff, by the use of threats, personal violence, intimidation or other means calculated or intended to prevent entering or continuing in the employ of plaintiff; defendants may not interfere with the access, ingress or egress of employees of plaintiff at or about any of the entrances of plaintiff's property or in any manner interfere with employees in their place of employment or at their homes or in other places; they may not interfere in any manner with persons desiring to do business with plaintiff; they may not congregate or loiter about the premises of plaintiff or in the vicinity thereof or interfere with or obstruct plaintiff's business by coercion, threats, or intimidation; they are enjoined from inducing or attempting to induce sellers of merchandise from refraining from selling plaintiff or from delivering merchandise to plaintiff, and from endeavoring to prevent deliveries to and from the property of plaintiff. The order does permit defendants to

maintain six pickets on each side of the Book Tower garage and one picket at the Book Cadillac hotel.

Defendants assert that relief should be denied plaintiffs because of the clean hands doctrine of equity. We decline to base the decision on this point because this court has not spoken for nearly 18 years on the question of the right of peaceful picketing (*Schwartz* v. *Cigar Makers International Union,* 219 Mich. 589), and we believe it would better serve the bench and bar to base the decision on that one issue.

The problem of force and violence has been removed from the case by defendants' concession that they do not contend that violence, threats of violence and intimidation are legal. They claim only the right of peaceful picketing, so as to permit them to publicize the facts of their dispute without the use of force and intimidation, and thus to accomplish moral persuasion. The sole question for our determination is whether such activity is lawful.

Any form of picketing was abhorrent to the common law. About 42 years ago this court adopted the viewpoint, in line with many other courts, that such activities may be enjoined. *Beck* v. *Railway Teamsters' Protective Union,* 118 Mich. 497 (42 L. R. A. 407, 74 Am. St. Rep. 421). See, also, *Ideal Manfg. Co.* v. *Wayne Circuit Judge,* 139 Mich. 92; *Ideal Manfg. Co.* v. *Ludwig,* 149 Mich. 133 (119 Am. St. Rep. 656); *In re Langell,* 178 Mich. 305 (50 L. R. A. [N. S.] 412); *Clarage* v. *Luphringer,* 202 Mich. 612; *Schwartz* v. *Cigar Makers International Union, supra.* Defendants contend that the decisions of the supreme court of the United States on April 22d of this year in *Thornhill* v. *Alabama,* 310 U. S. 88 (60 Sup. Ct. 736), and *Carlson* v. *California,* 310 U. S. 106 (60 Sup. Ct. 746), are in conflict with the law as

enunciated in the Michigan decisions. We think the
*Beck Case* is inconsistent only in part with these
recent decisions; they do not condone any inter-
ference with property rights by force or intimida-
tion. It is the change in factual conditions since
1898 that leads to a different result. The ruling in
the *Beck Case* and the later cases based thereon
must be qualified by the decisions in the *Thornhill*
and *Carlson Cases.*

The law has always sanctioned peaceful means
of advertising a labor dispute. In the *Beck Case,*
Justice GRANT stated that laborers "may use per-
suasion to induce men to join their organization, or
to refuse to work except for an established wage.
They may present their cause to the public in news-
papers or circulars, in a peaceable way, and with no
attempt at coercion. If the effect in such case is
ruin to the employer, it is *damnum absque injuria,*
for they have only exercised their legal rights. The
law does not permit either party to use force, vio-
lence, threats of force or violence, intimidation, or
coercion." At the time of the *Beck Case,* it was
the view of many courts that picketing could not be
carried on peacefully—the display of banners was
regarded as a subterfuge for unspoken threats. "It
would be idle to argue," it was said, "that these
circulars were not intended as a menace, intimida-
tion, and coercion. They were so used, and were 'a
standing menace' to every one who wished to work
for, or trade with, complainants." The argument
that pickets are "thrown out" for the purpose of
peaceful argument and persuasion was rejected with
the answer: "They are intended to intimidate and
coerce." The court quoted the then current lexicog-
rapher's definition of the word "picket":

"A body of men belonging to a trades union sent
to watch and annoy men working in a shop not be-

longing to the union, or against which a strike is in progress.'' Century Dictionary; Webster Dictionary.

It was further said that ''This definition is the result of what has been done under it, and the common application that has been made of it. This is the definition the defendants put upon it in the present case.''

The court was not laying down an ultimate principle of law but was expressing an evidentiary conclusion of the time to illustrate the principle that you must not demonstrate or intimate that force will be used to achieve victory in the economic dispute. Such a conclusion of another year should not necessarily control the experience of today. The very meaning of the word ''picket'' has taken on a different color in the lexicographer's definition of our time, as compared with the definition current when the *Beck Case* was decided. Webster's New International Dictionary (2d Ed., 1937), defines a picket as

''A person posted by a labor organization at an approach to the place of work affected by a strike to ascertain the workmen going and coming and to persuade or otherwise influence them to quit working there.''

While this definition does not encompass all the activities included by the word ''picketing,'' we note the absence of the element of ''annoy.'' It would serve no useful purpose to attempt at this date to reexamine the rightness or wrongness of the conclusion of 1898; it is enough that it has been declared that the dissemination of information about a labor dispute near the premises of the employer no longer has inherent in its nature the ''covert and unspoken threats'' which prompted the decision in the *Beck Case.*

Plaintiff points out the fact that the legislature has not seen fit to change by statute the common-law conclusion since this court rendered its first opinion prohibiting all picketing; plaintiff insists that the circuit judge must unflinchingly abide by the unchanged rulings of this court (*Dodge* v. *Van Buren Circuit Judge,* 118 Mich. 189). Although the question has been presented to the legislature, no law permitting peaceful picketing has been enacted. Defendants call our attention to the fact that peaceful picketing has been upheld in many jurisdictions where the question has arisen. It is unnecessary to cite cases to this effect. The right of peaceful picketing has been upheld as an exercise of the right of free speech by the highest court in the land. Our legislative inactivity is no answer for denying a right secured by the fundamental law of the United States.

"Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution." (*Senn* v. *Tile Layers Protective Union,* 301 U. S. 468, 478 [57 Sup. Ct. 857].)

Peaceful picketing is within the right to "make known the facts of a labor dispute," and is lawful.

The liberty of speech and press secured from Federal abridgment by the First Amendment to the Federal Constitution has been carried over and made a part of the fundamental personal rights and liberties secured from State abridgment by the Fourteenth Amendment. *Stromberg* v. *California,* 283 U.S. 359 (51 Sup. Ct. 532, 73 A. L. R. 1484); *Near* v. *Minnesota,* 283 U. S. 697 (51 Sup. Ct. 625); *Palko* v. *Connecticut,* 302 U. S. 319 (58 Sup. Ct. 149); *Hague* v. *C. I. O.,* 307 U. S. 496 (59 Sup. Ct. 954);

*Schneider* v. *State,* 308 U. S. 147 (60 Sup. Ct. 146). It is the duty of the State courts as well as the courts of the Nation to guard and enforce every right secured by the Federal Constitution. *Robb* v. *Connolly,* 111 U. S. 624 (4 Sup. Ct. 544); *Mooney* v. *Holohan,* 294 U. S. 103 (55 Sup. Ct. 340, 98 A. L. R. 406). The Federal Constitution is "the supreme law of the land; and the judges in every State shall be' bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." (Art. 6, § 2).

Controlling interpretation of Federal law rests with the supreme court of the United States. *Winget* v. *Railway Co.,* 210 Mich. 100; *Thomas* v. *Blair,* 185 Mich. 422; *French* v. *Railway Co.,* 204 Mich. 578. The same liberty of speech and press is secured by the Constitution of the State of Michigan.* *City of Dearborn* v. *Ansell,* 290 Mich. 348.

At the time leave to appeal was granted, we modified the order of the trial court so as to enjoin the placing of one picket near the Book Cadillac hotel. As the hotel is not a party to this suit, we withdraw the modification order. The preliminary injunction as modified by the trial court to permit peaceful picketing was proper.

The writ of mandamus is denied; costs to defendants.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, and McALLISTER, JJ., concurred with BUTZEL, J.

WIEST, J. (*concurring*). An employer and employee industrial labor disagreement may be publicized, but action along such lines must not be animated by ill will, carried to the point of inter-

---

* See Const. 1908, art. 2, § 4.—REPORTER.

ference, planned and well calculated to intimidate patrons, destroy business rights and, by such means, coerce compliance with demands.

The bill herein alleged cause for a restraining order pending the hearing, but the answer raised issues of fact thereon and, thereupon, the Court restrained activities of defendants beyond peaceful picketing.

If such restraint is complied with in letter and spirit within the holdings of this Court in *Beck* v. *Railway Teamsters' Protective Union*, 118 Mich. 497 (42 L. R. A. 407, 74 Am. St. Rep. 421); *United States Heater Co.* v. *Iron Molders' Union*, 129 Mich. 354; *Ideal Manfg. Co.* v. *Wayne Circuit Judge*, 139 Mich. 92; *Ideal Manfg. Co.* v. *Ludwig*, 149 Mich. 133 (119 Am. St. Rep. 656); *Baltic Mining Co.* v. *Houghton Circuit Judge*, 177 Mich. 632; *In re Langell*, 178 Mich. 305 (50 L. R. A. [N. S.] 412); *Clarage* v. *Luphringer*, 202 Mich. 612, there exists no reason for disturbing the order appealed from.

If and when the question of whether the subsequent activities of defendants exceed peaceful picketing comes before the court it will be time to analyze and, if found in point, apply the recent holdings in *Thornhill* v. *Alabama*, 310 U. S. 88 (60 Sup. Ct. 736), and *Carlson* v. *California*, 310 U. S. 106 (60 Sup. Ct. 746).

For the reasons mentioned I join in denying the writ of mandamus.

CHANDLER, J., concurred with WIEST, J. The late Justice POTTER took no part in this decision.