EX PARTE J. M. WALTRIP.

No. 23839. Delivered January 28, 1948.

344

*Scarborough, Yates, Scarborough & Black,* of Abilene, for appellant.

*E. M. Overshiner,* Corporation Counsel, of Abilene, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from an order of the judge of the 104th Judicial District remanding J. M. Waltrip to the custody of the Assistant Chief of Police of Abilene, Texas.

The relator and others were engaged in picketing the Wooten Wholesale Grocery Company, in Abilene. They were walking back and forth in front of the premises, carrying a banner with the words: "Strike. Wooten is unfair to Teamsters Local 583, A. F. of L."

The prosecution was in the city court and charged a violation of the following ordinance of said city: (Caption omitted.)

"Section One: That on and after the taking effect of this ordinance it shall be unlawful for any person in the City of Abilene to be engaged in what is commonly known as picketing along the streets or sidewalks in said City.

"Section Two: It shall be unlawful for any person in said City to march along or across any street, sidewalk or anywhere within the territorial limits of said City, carrying or displaying any flag or banner with any inscription thereon or words, sign or mark of any kind tending to hurt or injure any person,

firm or corporation engaged in any lawful business or any such business.

"Section Three: It shall be unlawful for any person in said City at any place within the Corporate limits of said City by words, sign or gesture to say or do anything that would tend to hurt or injure a lawful business carried on in said City by any person, firm or corporation with intent to injure such business.

"Section Four: Any person violating any part or section of this ordinance shall be adjudged guilty of a misdemeanor and upon conviction in the Corporation Court shall be fined in any sum not exceeding One Hundred Dollars.

"Section Five: If any part of this ordinance shall be declared void for any reason, such holding shall not affect any other part of said ordinance.

"Section Six: All ordinances or parts of ordinances in conflict herewith are hereby repealed. Passed this 14th day of February, 1920. Approved this 14th day of February, 1920. Dallas Scarborough, Mayor."

The first contention presented in behalf of appellant is that the ordinance is contrary to Article 5153, R. S. 1925, making it lawful for any member of a trades union or other organizations or associations, or any other person, to induce or attempt to induce by peaceful and lawful means any person to accept any particular employment or refuse to do so, with the proviso that such persons should not have the right to invade or trespass on the premises of another without the consent of such other person. This article has been held to recognize the legality of peaceful picketing in industrial disputes. See Ex parte Stout, 198 S. W. 967, and authorities there cited.

Likewise, the city's right to exercise control over the streets in a proper sense must be conceded. It is contended, however that its power to do so cannot be used as a means of throttling free speech, or other rights guaranteed by the constitution.

Abilene is a home-rule city. Its power to legislate comes directly from the constitution. Such fact existed at the time of the passage of the ordinance involved. The power of the state to restrict the city, in the passage of ordinances of the nature here involved, depends on many factors which we do not feel it necessary to discuss at this time, because of the dis-

position hereafter made of the case. In any instance, however, the language of the legislature making any such restriction must be specific and unambiguous and not inconsistent with or in conflict with the provisions of the constitution and general laws on the same subject. See Xydias Amusement Co. v. City of Houston, 185 S. W. 415. It was there held, as in other cases, that the receipt and acceptance by the state of the fee for a license to conduct a business does not operate to preclude the city, in which such operation is had, from imposing regulations on its business in accordance with the powers of the city under the constitution to regulate.

An investigation of the act which created Article 5153 R. S. is necessary to a proper understanding of its purpose and force. It must be construed with Article 5152, which grants the right to a person to organize or become a member of a labor union. Such article has no further purpose. As a restriction on the grant given by Art. 5153, it is made clear that it carries no right to invade or trespass upon the premises of another without the consent of the owner. It is our conclusion that ordinance No. 136, of the City of Abilene, treats of an entirely different subject matter, and is not in conflict with Article 5153 R. S. 1925.

The next question for our consideration, as raised by the appellant, is the power of the City of Abilene to abridge the right of free speech as guaranteed by the 14th Amendment to the Constitution of the United States. The decisions of our courts, influenced by new legislation, as revealed by text writers, indicate that the subject has been under consideration for a great many years. The trend of thought has been progressively in favor of the contention that no legislative body may forbid peaceful picketing.

At common law any form of picketing was held to be abhorrent to good morals and against public policy. Within the past half century many of the courts have held the view that picketing in any form may be enjoined in the civil courts and such injunctive rights passed only with legislation on the subject, chiefly by the Congress of the United States. Much of the legislation on the subject evidences conflicting ideas of thought, making such legislation irreconcilably in conflict. We must, then, rely on the decisions of the court for the establishment of the rights of the parties at interest, and the public, in all matters involving disputes between labor and industry. It has now reached the point, we think, that it is not a matter so much

of construing the intention of the Congress, or the Legislature, or, in the instant case, the ordinance of the City of Abilene, as it is to determine from the decisions the extent of the power to legislate on the subject involved. So great has been the interest of the public, and so frequently has it been brought into notice within recent years, that it is difficult to write an opinion in such phraseology as to eliminate all possibility of some misconception of the force producing the opinion. No honest judge will write with a prejudiced or partial mind on any subject. It is his duty to construe the law as it is, regardless of his personal likes or dislikes, or any opinion which he might have about what the law should be.

Peaceful picketing is within the right to make known the facts of a labor dispute and is lawful. Liberty of speech and press, secured from Federal abridgment by the First Amendment, is similarly secured to all persons by the 14th Amendment against abridgment by the states (and consequently, their subdivisions.) Book Tower Garage, Inc., v. Local No. 415, International Union, U. A. W. of America, et al, 295 N. W. 320.

The controlling interpretation of Federal Laws and the Federal Constitution rests with the Supreme Court of the United States, but it is the duty of the state courts to guard and enforce every right secured by the Federal Constitution. The right to speak freely is guaranteed by the Constitution. That right does not carry with it freedom from libel, duress, fraud, and the consequences of wrong doing in the performance of picketing. It follows that picketing, as other expressions of opinion and methods of dissemination of information, is subject to reasonable regulations. Hotel & Restaurant Employees' Int. Alliance Local No. 122, et al v. Wisconsin Employment Relations Board, et al, 294 N. W. 632.

Picketing as an incident to a labor dispute is, to some degree, an exercise of the right of freedom of speech. "Pickets" may be defined as those who walk patrol in the vicinity of a place of business involved in a labor dispute and give information to the public concerning such dispute. The term includes peaceful picketing by a member of a labor union, on behalf of his organization. Only clear and present danger of substantive evil may justify abridgement of the right to engage in peaceful picketing. Many regulatory provisions have been held to violate the right of freedom of speech. A. F. of L., et al v. Bain, et al, 106 Pacific (2d) 544.

While it would be interesting to review the evolution of the decisions of our courts on the subject, together with the influencing legislation, both by Congress and the states, its value to the jurisprudence of the state is doubted. Certainly it is not necessary to a decision of the case now before us. A distinguished commentator has observed: "The liberty of the press might be rendered a mockery and a delusion, and the phrase itself a byword, if, while every man was at liberty to publish what he pleased, the public authorities might nevertheless punish him for harmless publications." Thus is summarized the thought that it is not picketing which the state, or the municipality, may prohibit but the abuse of such right, in a manner which will interfere with the due process of industry and society generally. The ordinance before us is the thing which we must consider, and not the charge which may be laid under it, or the evidence in support thereof.

Without the necessity of discussing Thornhill v. State of Alabama (310 U. S. 88, L. Ed. 84 p. 1093) in all of its phases, we think it is authority for the position that the ordinance in question is void as being in violation of the 14th Amendment to the Constitution, in that it is an unreasonable restraint on the freedom of speech. Thornhill was convicted in a circuit court, of the State of Alabama, under an article of its statute forbidding loitering or picketing. We quote from page 101, (84 L. Ed. 1102) :

"In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution. Hague v. Committee for Industrial Organization, 307 U. S. 496, 83 L. Ed. 1423, * * *.

"It is recognized now that satisfactory hours and wages and working conditions in industry and a bargaining position which makes these possible have an importance which is not less than the interests of those in the business or industry directly concerned. The health of the present generation and of those yet unborn may depend on these matters, and the practices in a single factory may have economic repercussions upon a whole region and affect widespread systems of marketing. The merest glance at State and Federal legislation on the subject demonstrates the force of the argument that labor relations are not matters of mere local or private concern. Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the

destiny of modern industrial society. The issues raised by regulations, such as are challenged here, infringing upon the right of employees effectively to inform the public of the facts of a labor dispute are part of this larger problem."

Whether or not the Congress or the Supreme Court have justified the legislation and the construction given to such legislation is not a matter for our consideration. Congress had the power to pass the laws, which the Supreme Court has had the power to, and did, construe. It is the duty of this Court to respect such decisions and the writer has no hesitancy in doing so.

The relator is entitled to the relief sought: The judgment is reversed and it is ordered that he be discharged from custody.