## *In re* CERTIFIED QUESTION

## JEWELL THEATRE CORPORATION v OAKLAND COUNTY PROSECUTOR

Docket No. 71039. Argued October 6, 1983 (Calendar No. 17).—Decided December 28, 1984.

Jewell Theatre Corporation, operator of the Campus Theatre, and Jeannine Young and Christine Pietrzak, entertainers who wish to perform at the Campus Theatre, brought an action in the United States District Court for the Eastern District of Michigan against the Oakland County Prosecutor, the City of Pontiac, and the Chief of Police of the City of Pontiac, challenging the constitutionality of the Michigan indecent exposure statute. The court, Robert E. DeMascio, J., denied the plaintiffs' motion for a preliminary injunction against enforcement of the statute and certified to the Supreme Court of Michigan the question how, in the light of the claims raised in the federal court that the statute is unconstitutionally vague and overbroad, the words "open and indecent exposure" in the statute should be defined.

In an opinion by Justice Ryan, joined by Justices Kavanagh, Levin, and Cavanagh, the Supreme Court *held:*

The Supreme Court declines to answer the question certified. The question actually seeks no advice concerning Michigan law as is required to trigger application of the General Court Rule providing for response to questions from federal courts. Rather it has been employed to obtain a ruling from the Michigan Supreme Court on a question of federal constitutional law with explicit instructions from the federal court as to how an answer should be written to avoid subsequent adjudication by the federal court that the statute in question is unconstitutional. No litigation is before the Michigan Supreme Court challenging

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 5 Am Jur 2d, Appeal and Error §§ 1025-1028.

[2] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 17, 18.

What constitutes "public place" within meaning of statutes prohibiting commission of sexual act in public place. 96 ALR3d 692.

Criminal offense predicated upon indecent exposure. 94 ALR2d 1353.

the constitutionality of the statute; had the plaintiffs desired such adjudication, they presumably would have filed an action in a Michigan court.

Justice Boyle, joined by Chief Justice Williams, concurring, stated that the Legislature determined that unrestricted display of obscene conduct is injurious to society and decided as a matter of public policy to proscribe such conduct. Open exposure and indecent exposure are distinctly different kinds of behavior; the Legislature understood each to define different conduct. Thus, prospectively from December 28, 1984, the indecent exposure statute should be construed consistent with the minimum standards set forth in *Miller v California,* 413 US 15 (1973). The proscription against indecent exposure prohibits only patently offensive exhibition of ultimate sex acts, normal or perverted, actual or simulated, or patently offensive exhibitions of masturbation or excretory functions and lewd exhibition of the genitals. The proscription against open exposure prohibits any conduct consisting of display of any part of the human anatomy under circumstances that create a substantial risk that someone might be offended. Such construction would require evaluation of the setting in which an exposure took place in order to determine whether anyone might reasonably have been expected to observe it and, if so, whether the person might reasonably have been expected to have been offended by what was seen. It should not generally include exposure under conditions in which a person reasonably thought that they were alone and unobserved when they were not or where exposure was undertaken in a place where others who were likely to be offended were unlikely to come, but where prurient interest attracted voyeurs or the interest of law enforcement attracted the police. The relevant criterion should be what effect the actor should reasonably have expected under all of the circumstances. Exposure that was not "open", because it did not take place under circumstances that created a substantial risk that someone might be offended, could still be proscribed under the statute as "indecent" if it violated the minimum standards of *Miller v California.* Adoption of the standards would enable Michigan to retain an indecent exposure statute.

Justice Brickley, concurring, wrote that while interpreting a Michigan statute in light of *Miller v California,* 413 US 15 (1973), does in part present a question of Michigan law, nevertheless, interpreting a statute to avoid constitutional difficulties also risks violating the will of the Legislature. When and if such interpretation is proper, it can best be done in the context of a lawsuit, when a full record is available for review.

OPINION OF THE COURT

1. COURTS — SUPREME COURT — CERTIFIED QUESTIONS.

A question certified by a federal district court that sought no advice concerning Michigan law and, rather, was employed to obtain a ruling by the Michigan Supreme Court on a question of federal constitutional law with explicit instructions from the federal court as to how an answer should be written to avoid a subsequent finding by a federal court that the statute that gave rise to the question was unconstitutional did not trigger the General Court Rule providing for response to questions from federal courts, resulting in a declination by the Supreme Court to answer the question (GCR 1963, 797.2).

CONCURRING OPINION BY BOYLE, J.

2. CRIMINAL LAW — INDECENT EXPOSURE — OPEN EXPOSURE.

*The term "indecent exposure" in the indecent exposure statute should be construed to proscribe only patently offensive exhibition of ultimate sex acts, normal or perverted, actual or simulated, or patently offensive exhibitions of masturbation or excretory functions and lewd exhibition of the genitals; the term "open exposure" should be construed to prohibit any conduct consisting of display of any part of the human anatomy under circumstances creating a substantial risk that someone might be offended; such construction would require evaluation of the setting in which an exposure took place in order to determine whether anyone might reasonably have been expected to observe it and, if so, whether the person might reasonably have been expected to have been offended by what was seen (MCL 750.335a; MSA 28.567[1]).*

CONCURRING OPINION BY BRICKLEY, J.

3. COURTS — SUPREME COURT — CERTIFIED QUESTIONS.

*Interpretation of a Michigan statute consistent with instructions from a federal court under the guise of a certified question regarding Michigan law so as to avoid subsequent constitutional difficulties risks violation of the will of the Legislature; such interpretation can best be accomplished in the context of a lawsuit, with a full record available for review.*

*Taylor & Rubin, P.C.* (by *Stephen M. Taylor),* for the plaintiffs.

*Thomas S. Richards* and *Edward Sosnick* for the Oakland County Prosecutor.

*Alger H. Strom* for the City of Pontiac.

RYAN, J. Invoking the certified question provisions of GCR 1963, 797.2, a federal district court has asked this Court the question:

"In light of claims raised in federal court that MCL 750.335a [MSA 28.567(1)] is unconstitutionally vague and overbroad, how should the words 'open and indecent exposure,' as used in that statute, be defined?"[1]

---

[1] The certifying federal court obviously meant to say "open *or* indecent" which is the correct statutory language of MCL 750.335a; MSA 28.567(1).

The following agreed-upon statement of facts was certified to us:

"Plaintiff Jewell Theatre Corporation is a Michigan corporation primarily engaged in the exhibition of live entertainment and motion picture films. Plaintiff operates the Campus Theatre located in Pontiac, Michigan, for such purposes.

"Plaintiffs Jeannine Young and Christine Pietrzak are entertainers who have performed, and wish to continue to perform, at the Campus Theatre and several other Oakland County movie theatres as part of the live entertainment. The live entertainment takes the form of contests on stage where the contestants perform, in part, while totally nude.

"On August 18, 1981, Pontiac police officers observed two females performing before the public while totally nude as part of the live entertainment at the Campus Theatre. As a result of the performers' conduct while performing, a complaint and warrant were authorized by the Oakland County Prosecutor's Office and issued by the 50th District Court charging the two female performers, the theatre manager and the stage man with indecent exposure under MCL 750.335a and conspiracy to commit indecent exposure under MCL 750.157a [MSA 28.354(1)].

"In pertinent part, MCL 750.335a reads as follows: 'Any person who shall knowingly make any open or indecent exposure of his or her person or of the person of another shall be guilty of a misdemeanor * * *'.

"In pertinent part, MCL 750.157a reads as follows: 'Any person who conspires together with one or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein: * * *'.

"On September 1, 1981, Pontiac police officers again observed five females performing before the public while totally nude on stage at the Campus Theatre. As a result of the performers' conduct while performing, a complaint and warrant was *[sic]* approved by the Oakland County Prosecutor's Office and issued by the 50th District Court charging the five females, the theatre manager and others who participated in the presentation of the females with indecent exposure under MCL 750.335a and conspiracy to commit indecent exposure under MCL 750.157a.

"On October 20, 1981, Pontiac police officers again observed two females performing before the public while totally nude on stage at the Campus Theatre. As a result of the performers' conduct while

performing, the two females and the theatre manager were arrested and warrants subsequently authorized and obtained charging them with indecent exposure under MCL 750.335a, conspiracy to commit indecent exposure under MCL 750.157a, and disorderly conduct under MCL 750.167(1)(f) [MSA 28.364(1)(f)].

"Plaintiffs Young and Pietrzak allege that they are entertainers who have engaged in live nude dancing while performing on stage at the Campus Theatre, and that they wish to continue such performances there and elsewhere throughout Oakland County. They seek the right to engage in constitutionally protected forms of nude dancing at 'amateur nights' sponsored by local theatres. Neither of the said plaintiffs have been charged with a criminal offense for their performances at the Campus Theatre. These plaintiffs allege that the defendants have announced their intention to continue to enforce the indecent exposure, conspiracy and disorderly conduct statutes with respect to live performances at the Campus Theatre, and to make arrests thereunder. These plaintiffs contend that because of their fear of being arrested and prosecuted by defendants, they have had to forego their constitutionally protected right to perform at the Campus Theatre. Plaintiffs contend that it has become the practice and procedure of the defendants to arrest and charge anyone engaging in a nude performance on stage with violations under MCL 750.157a, 750.167(1)(f), and 750.335a.

"Plaintiff Jewell Theatre contends that it has the constitutional right to engage in the business of offering live nude entertainment, and that this right is being infringed by defendants' actions.

"Defendants deny that anyone has been arrested, charged or threatened with prosecution for mere nude dancing. Defendants contend that the only arrests and prosecutions made at the Campus Theatre have been, and any future prosecutions will be, based on indecent exposure or conduct wherein the dancers engage in such conduct as rubbing the pubic area with their hands, squatting or spreading their legs and buttocks so as to expose the anus and vagina, masturbating, simulating acts of sexual intercourse, or performing in a similar manner in view of the patrons present. Defendants contend that such acts do not fall within any constitutional rights or protections, and are subject to prosecution as conduct prohibited by law.

"Plaintiffs seek to have the indecent exposure statute, MCL 750.335a, and the disorderly persons statute, MCL 750.167(1)(f) declared to be unconstitutional, both on their face and as applied to plaintiffs. Plaintiffs claim the statutes are unconstitutionally vague, because a person of ordinary intelligence could not determine which activities are prohibited and which are not. Plaintiffs also claim the statutes are unconstitutionally overbroad, on the ground that they prohibit conduct protected by the constitutional right of freedom of expression.

"Defendants contend that the statutes are not vague because they adequately apprise plaintiffs of the proscribed conduct. Defendants further contend that the statutes are not overbroad, because they affect conduct rather than expression, and do not threaten interference with any constitutionally protected activity. Defendants further contend that assuming *arguendo* that the statutes are unconstitutionally vague and overbroad on their face, they can be validated by following the construction applied by the Michigan courts in similar

GCR 1963, 797.2, establishes a procedure whereby federal courts may certify questions to this Court, and obtain an opinion from this Court on an issue of first impression of state law for application by the federal court to the litigation before it. The rule is designed primarily to enable federal courts, particularly when exercising diversity jurisdiction, to defer to this Court on matters of first impression concerning state law in order that the federal court will not be placed in the position of construing the state constitution or a state statute or declaring state common law when this Court has not spoken to the subject. The specifically applicable court rule provides:

"Rule 797 Certified Questions.

\* \* \*

".2 From Other Courts.

"(a) When a federal court or state appellate court considers a question that *Michigan law* may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own motion or that of an interested party certify the question to the Michigan Supreme Court." (Emphasis added.)

It is widely understood that the rule which has been adopted in many states is designed to serve the interest of comity between state and federal courts by enabling state courts to declare first what state law means when federal law requires the application of state law. The United States district courts sitting in Michigan and the United States Circuit Court of Appeals for the Sixth Cir-

statutes by incorporating the obscenity standards set forth in *Miller v California,* 413 US 15 [93 S Ct 2607; 37 L Ed 2d 419] (1973).

"On August 10, 1982, the U.S. District Court issued its Memorandum and Order in which it denied plaintiffs' motion for a preliminary injunction to enjoin enforcement of the statutes, and ordered the matter stayed for up to nine months to certify certain state issues to the Michigan Supreme Court."

cuit have employed this rule with increasing frequency in recent years. It is a sound and wisely conceived rule which serves the interests of the efficient administration of justice, promotes comity between federal and state courts, and, when appropriately invoked, clarifies and respects the jurisdictional prerogatives of state and federal courts.

The rule has not been properly invoked in this case.

The action before the federal court is a suit for declaratory judgment brought under 42 USC 1983. The plaintiffs in the case have asked the federal court to declare the Michigan indecent exposure statute, MCL 750.335a; MSA 28.567(1), to be unconstitutionally vague and overbroad both as applied to the plaintiffs before the federal court and facially. In the early stages of the federal litigation, the plaintiffs before that court requested a preliminary injunction to restrain the defendant Oakland County Prosecuting Attorney and local police authorities from enforcing the statute pending the federal court decision on its constitutionality.

In August of 1982, the federal district judge to whom the case is assigned, in a "Memorandum and Order Denying the Requested Preliminary Injunction", discussed the facts of the case, described the theories of the contesting parties, observed that the court was faced with a vagueness and overbreadth challenge, rejected the idea that the federal court should abstain from the exercise of jurisdiction in this case, and announced it would submit to this Court the certified question which is quoted above. In the course of its opinion, however, the federal court, remarkably, but unequivocally, declared that the statute apparently does not pass constitutional muster and suggested that it would be held unconstitutional unless this Court

responded to a certified question giving a "saving construction to § 750.335a." Specifically, the federal court declared:

"We believe it clear that, in the absence of a limiting construction from a state court, § 750.335a does not speak with the clarity required of a criminal statute. We do not believe that a person of ordinary intelligence could determine from the words 'open or indecent exposure' precisely what type of dancing is proscribed by § 750.335a. For example, the statute could well be interpreted to apply to all nude dancing; if that is the proper construction, the statute is unconstitutionally overbroad. * * * [O]n the other hand, the statute could well be meant to apply to the following types of conduct only:

"1) patently offensive exhibitions of ultimate sex acts, normal or perverted, actual or simulated;

"2) patently offensive exhibitions of masturbation or excretory functions, and lewd exhibition of the genitals.

"The Supreme Court, in *Miller v California,* 413 US 15 [93 S Ct 2607; 37 L Ed 2d 419] (1973), listed the conduct described above as examples of conduct that is not constitutionally protected and thus is subject to prohibition. Thus, if the Michigan indecent exposure statute were construed as being applicable to the above conduct only, then the statute would not be overbroad. We believe that these two possible interpretations of § 750.335a are equally plausible."

And,

"We believe that it is proper to give the Michigan Supreme Court * * * an opportunity [to give a limiting construction to § 750.335a]. We note that Michigan General Court Rule 797.2 permits federal courts to certify questions of *state law* to the Michigan Supreme Court." (Emphasis supplied.)

And,

"Thus, we believe that if a case involving the facial

constitutionality of § 750.335a were to come before the Michigan Supreme Court, it would in all probability 'save' § 750.335a by giving that statute the same limiting construction which it gave [MCL] 750.343a [MSA 28.575(1)] in *[People v Neumayer,* 405 Mich 341; 275 NW2d 230 (1979)].

"Were the Michigan Supreme Court to limit § 750.335a in the same manner that it limited § 750.343a in *Neumayer,* the statute would then be neither overbroad nor vague."

Thus, it is plain that the certified question procedure has not been employed to obtain an expression of this Court's opinion on a matter of Michigan law at all, or, even simply to obtain this Court's opinion "how * * * the words 'open [or] indecent exposure' as used in [MCL 750.335a] should be defined." It has been employed instead to obtain a ruling from this Court on a question of First Amendment federal constitutional law with very explicit instructions from the federal court to this Court how that answer should be written to avoid federal court adjudication that the statute is unconstitutional.

The rhetorical questions, of course, are by what authority does this Court tell the federal court how the litigation before it challenging the constitutionality of our statute should be decided and by what authority does this Court "save" the statute from the probability of federal court nullification by ruling upon its constitutionality? There is no litigation before this Court challenging the constitutionality of the statute. Indeed, there is no lawsuit on the matter before this Court at all. There is a mere request for an advisory opinion not about "Michigan law" as is required by GCR 1963, 797.2, but about the constitutionality of a Michigan statute under the First Amendment of the United States Constitution, a question of federal

constitutional law, thinly veiled behind a pur-
ported request to advise the federal court "how
* * * the words 'open [or] indecent exposure' as
used in [MCL 750.335a] should be defined," accom-
panied by advice as to precisely how the question
should be answered.

Presumably, had the plaintiffs in the case
wished to have this Court adjudicate the First
Amendment constitutionality of the language in
question, they would have filed the litigation in
one of the courts of this state. Plainly, that is not
what they are after.

Because the question certified actually seeks no
advice concerning "Michigan law" as is required to
trigger application of our rule, we decline to an-
swer the question certified.

KAVANAGH, LEVIN, and CAVANAGH, JJ., con-
curred with RYAN, J.

BOYLE, J. (concurring). The sole issue before this
Court is how the words " 'open' and 'indecent
exposure' " as used in the Michigan indecent expo-
sure statute, MCL 750.335a; MSA 28.567(1), should
be defined in light of claims raised in federal court
that the statute is unconstitutionally vague and
overbroad.

The Michigan indecent exposure statute, MCL
750.335a; MSA 28.567(1) reads in relevant part:

"Any person who shall knowingly make any open or
indecent exposure of his or her person or of the person
of another shall be guilty of a misdemeanor, punishable
by imprisonment in the county jail for not more than 1
year, or by a fine of not more than $500.00 * * *."

The substance of the challenges are, that the
statute is unconstitutionally overbroad, because it
can be interpreted to prohibit conduct protected by

the First Amendment's guarantee of freedom of expression, *Schad v Borough of Mount Ephraim,* 452 US 61; 101 S Ct 2176; 68 L Ed 2d 671 (1981), and unconstitutionally vague, because it does not give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. See *Grayned v City of Rockford,* 408 US 104; 92 S Ct 2294; 33 L Ed 2d 222 (1972).

The First Amendment to the United States Constitution provides in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech * * *."

The First Amendment right to freedom of speech is guaranteed to citizens of the states by the Fourteenth Amendment. *Book Tower Garage, Inc v Local No 415, International Union UAWA (CIO),* 295 Mich 580, 586; 295 NW 320 (1940).

In *Schad v Borough of Mount Ephraim, supra,* pp 65-66, the United States Supreme Court recognized that dancing may be a form of expression protected by the freedom of speech guarantees of the First Amendment. Although " 'nudity alone' does not place otherwise protected material outside the mantle of the First Amendment," *Schad, supra,* p 66, obscene expression is not entitled to protection under either the United States Constitution, *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), or the Michigan Constitution, *People v Neumayer,* 405 Mich 341, 365; 275 NW2d 230 (1979). Moreover, when dealing with "lewd public conduct itself," the United States Supreme Court has expressly recognized that "the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior." *Miller, supra,* p 26, fn 8.

Furthermore, in *Paris Adult Theatre I v Slaton,*
413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973),
the Supreme Court also unequivocally rejected the
argument that state police powers could not regu-
late obscenity when displayed only to consenting
adults. This Court implicitly accepted that deter-
mination in its decision in *People v Neumayer,
supra,* pp 365-368.

In *Neumayer, supra,* this Court was faced with
similar vagueness and overbreadth challenges to
the Michigan criminal obscenity statute, MCL
750.343a; MSA 28.575(1), which prohibited the
knowing dissemination of obscene materials, with-
out specifically defining the meaning of the term
"obscene." Although we found the statute both
unconstitutionally vague and overbroad as written,
we were unwilling to leave Michigan without a
valid criminal obscenity statute. We recognized
that this section of the Penal Code represented a
legislative determination of a strong public policy
in this state to proscribe the dissemination of
materials falling within the United States Su-
preme Court's definition of obscenity. Therefore,
we specifically incorporated the standards and
definitions set forth in *Miller, supra,* in construing
obscenity under the statute in question.

In deciding as a matter of public policy to pro-
scribe the unrestricted display of obscene conduct,
under the indecent exposure statute, our Legisla-
ture has also determined that such activity within
this state is injurious to society. "The public policy
of this state is a mandate upon us." *Neumayer,
supra,* p 365.

In view of the expressed legislative public policy,
we also refuse to leave Michigan without a valid
criminal indecent exposure statute. Therefore we
announce. today, that prospectively from the date
of this opinion, MCL 750.335a; MSA 28.567(1),

should be construed in conformity with the minimum standards set forth in *Miller v California, supra,* and the term "indecent exposure," shall incorporate the *Miller* definitions to proscribe the following types of conduct only:

patently offensive exhibition of ultimate sex acts, normal or perverted, actual or simulated;
or,
patently offensive exhibitions of masturbation or excretory functions, and lewd exhibition of the genitals.

Although nudity and sexual expression have made their way onto the television and movie screen, no one has ever seriously suggested that we are ready to accept such displays in the village square. See *Paris Adult Theatre I v Slaton, supra,* p 67. Privacy with respect to certain parts of the human anatomy and in sexual conduct is still expected, and we believe the Legislature recognized that it is still necessary to look to the criminal sanction to help assure it.

We conclude that use of the disjunctive "or" in the statute suggests strongly that open exposure and indecent exposure are distinctly different kinds of behavior and that the Michigan Legislature understood each to define different conduct. Therefore, we define the statutory proscription against "open" exposure, to prohibit any conduct consisting of display of any part of the human anatomy under circumstances which create a substantial risk that someone might be offended. This standard would require evaluation of the setting in which the exposure took place in order to determine whether anyone might reasonably have been expected to observe it and, if so, whether the person might reasonably have been expected to have been offended by what was seen.

This test is suggested as a less misleading way of

saying what is meant by "in private." See Packer, *The Limits of the Criminal Sanction* (Stanford, California: Stanford University Press, 1968), p 311. It should not generally include exposure under conditions in which someone reasonably thought they were alone and unobserved when they were not, who selected a place where others likely to be offended by their exposure were unlikely to come, but where prurient interest attracted voyeurs, or the interest of law enforcement attracted the police. The relevant criterion would thus be what effect the actor or actors should reasonably have expected under all of the circumstances.

In conclusion, we would like to make clear that under the above test, exposure that was not "open," because it did not take place under circumstances that created a substantial risk that someone might be offended, could still be proscribed under the statute as "indecent" if it violated the minimum standards of *Miller v California, supra,* as hereinbefore set forth. We do not suggest that other conduct may not constitutionally be prohibited if specifically addressed by our Legislature, and wish to emphasize, as we did in *Neumayer, supra,* p 366, that we take this action today reluctantly, because we are again faced with one of two options: either *"Millerize"* the existing statute or have it declared unconstitutional. Again, we perceive the *Miller* approach to be the less offensive option because it does not leave this state without a valid criminal indecent exposure statute. However, we would have preferred, and indeed encourage the Legislature to address this issue directly.

WILLIAMS, C.J., concurred with BOYLE, J.

BRICKLEY, J. I fully concur in the result of Justice

RYAN's opinion and also with the vast majority of the reasoning therein. However, I cannot agree that the certified question procedure has not been used to obtain an opinion on Michgan law "at all."

Interpretation of a Michigan statute in light of *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), does in part present a question of Michigan law. Nevertheless, interpreting a statute to avoid constitutional difficulties also risks violating the will of the Legislature. When and if such interpretation is proper, it can best be done in the context of a lawsuit, when a full record is available for review.