PEOPLE v NEUMAYER

Docket No. 59093. Argued June 6, 1978 (Calendar No. 2).—Decided
    February 5, 1979. Rehearing denied 406 Mich 1118.

    Gary J. Neumayer, the manager of the Campus Theatre in
    Pontiac, was convicted by a jury in the 50th District Court,
    Lewis Fairbrother, J., of violating the criminal obscenity stat-
    ute by exhibiting two motion pictures. The Oakland Circuit
    Court, Robert L. Templin, J., reversed the conviction on the
    ground that the statute did not apply to the dissemination of
    "obscene" materials to consenting adults. The Court of Appeals,
    D. F. Walsh, P.J., and Allen and R. B. Burns, JJ., denied leave
    to appeal (Docket No. 29614). The people appeal. *Held:*

        1. The Supreme Court of the United States has held that
    state statutes designed to regulate obscene materials must be
    specifically defined and carefully limited either as written or as

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 349.
    50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 3.
    Constitutionality of Federal and state regulation of obscene litera-
    ture. 1 L Ed 2d 1499.
    The Supreme Court and the right of free speech and press. 21 L Ed
    2d 976.
[2] 16 Am Jur 2d, Constitutional Law § 309.
[3] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 5, 7, 10, 11.
[4, 5, 10, 13, 14] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity
    §§ 10, 11.
    Validity of procedure designed to protect the public against obscen-
    ity. 5 ALR3d 1214.
    16 Am Jur 2d, Constitutional Law § 346.
[6] 16 Am Jur 2d, Constitutional Law § 137.
[7, 8] 16 Am Jur 2d, Constitutional Law § 341.
[9, 15] 16 Am Jur 2d, Constitutional Law §§ 60, 87.
[11] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 4.
[12] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 1, 2, 4.
[16, 19] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 10.
[17] 73 Am Jur 2d, Statutes §§ 103, 293-296.
[18] 16 Am Jur 2d, Constitutional Law § 223.
[20] 16 Am Jur 2d, Constitutional Law § 225.
[21] 73 Am Jur 2d, Statutes §§ 337, 346.

authoritatively construed by the state courts, and has offered examples of what a state statute could define for regulation under the minimum protection afforded by the United States Constitution, but left the states free to chart their own course in dealing with obscene materials provided they do not use their police powers to regulate speech in a more restrictive fashion than allowed by *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), and related cases.

2. The criminal obscenity statute lacks the specificity required of a statute which seeks to regulate speech and thus unquestionably fail to pass muster under the United States Constitution. The terms employed in the definitional provision, "obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic", are neither specifically defined nor carefully limited as constitutionally required of any statute designed to regulate speech or expression. Likewise, it does not contain the necessary limitation that the material in question lack "serious literary, artistic, political, or scientific value" in order to be found obscene. Defining obscenity for constitutional purposes *solely* in terms of the capacity of the material to excite sexual thoughts or desires is clearly incompatible with *Miller v California.* These statutes are vague and overbroad, and therefore unconstitutional on their face.

3. Courts are duty bound to presume that all legislation is constitutional and will attempt to construe legislation so as to preserve its constitutionality. The United States Supreme Court has determined that obscenity is *not* within the scope of speech protected by the First Amendment. Although the Michigan Constitution has a freedom of expression clause which may confer broader protection than the First Amendment in certain instances upon certain types of expression, that does not mean that the right to freedom of expression in Michigan is unlimited. There is nothing either in the provision of the Michigan Constitution or in the history of the constitutional convention which even remotely leads to a belief that the drafters intended to afford obscenity unlimited constitutional protection. The phrase "being responsible for the abuse of such right" indicates that the drafters of the Constitution of 1963 foresaw situations in which certain types of speech would not fall within the protection guaranteed by the provision. Obscenity, as presently defined by the United States Supreme Court, is an "abuse of such right" and therefore does *not* fall within the purview of the protection assured.

4. Constitutional provisions must be interpreted within the

context of the times. The drafters of such provisions, even those who drafted them as recently as the early 1960's, could not anticipate all societal needs. The proliferation of obscene publications and films, together with the commercial establishments which deal in such items, have become commonplace in many areas and constitute a blight on commercial and residential neighborhoods. The Legislature has determined that the dissemination of obscene materials within this state is injurious to society. Therefore, the Legislature has decided, as a matter of public policy, to proscribe the dissemination of obscene materials. The public policy of this state is a mandate upon the courts. The intervening Constitution of 1963 does not provide greater protection for the knowing dissemination of obscene materials to consenting adults than that afforded by the First Amendment of the United States Constitution. Nor is there any indication of legislative intent that this statute be applied only to the dissemination of obscene materials to juveniles and unconsenting adults, but not to consenting adults.

5. In view of previously expressed legislative public policy, the Court refuses to leave Michigan without a valid criminal obscenity statute. Therefore, from the date of the opinion in this case the courts of this state shall construe the criminal obscenity statute so that it conforms to the minimum standards set forth in *Miller v California.* Specifically, the standards to be employed by the trier of fact in determining what is constitutionally obscene are: 1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; 2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and 3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. Furthermore, in defining the terms "obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic", the Court incorporates these definitions of obscenity into the existing statute: "Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated", and "Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

6. The circuit court's determination that the criminal obscenity statute has no applicability to the dissemination of obscene materials to consenting adults is reversed. The circuit court's reversal of defendant Neumayer's conviction is affirmed because at the time he committed the conduct charged the

Supreme Court had not construed the statute to proscribe such conduct.

Justice Kavanagh, joined by Justice Levin, agreed that the statute as written and previously construed is unconstitutional and that the defendant's conviction should be reversed. However, he dissented from the Court's prospective interpretation of the statute to incorporate the minimum constitutional standards set forth by the United States Supreme Court on the ground that there is no clear legislative intent to preserve the criminal obscenity statute as applied to consenting adults. Nor is there any principled basis on which the Court can choose between various acceptable definitions of the depictions or descriptions of sexual conduct which are hereafter to be deemed obscene under the statute.

1. The statute is unquestionably inadequate under the minimum requirements of the First Amendment which the United States Supreme Court set forth in the area of obscenity regulation. The statute neither specifically defines the conduct which is forbidden to be obscenely depicted or described, nor is it carefully limited in its application. It is vague because people of common intelligence must necessarily guess at its meaning and differ as to its application. It is overbroad because the wide sweep of its proscription infringes upon free speech rights.

2. In essence, the Court adheres to a position that the obscenity statute manifests a clear legislative intent to proscribe obscenity to an extent consistent with constitutional limitations, thereby allowing the Court to find legislative approval for whatever interpretation is necessary to preserve the constitutionality of the statute. Legislative intent with respect to obscenity was not frozen as of 1957, the date of passage of the statute. This Court has twice specifically stated that the Legislature could "supplement the state's statutory scheme proscribing the dissemination of obscene materials" in light of the United States Supreme Court's decision in *Miller v California*. The subsequent legislative inaction with respect to the regulation of dissemination of obscene material to consenting adults is particularly important in light of this Court's decision that a defendant's conviction could not stand under the act because the Court had not construed the obscenity statute, in accordance with *Miller*, to proscribe such conduct; in that case, the Court declined with request to so construe the statute. As a result, for over three years Michigan has had no effective obscenity statute applicable to consenting adults. Nevertheless, and despite this Court's notice, the Legislature has chosen to abide this situation. The legislative inaction over such a sus-

tained period weighs heavily on any interpretation of legislative intent.

3. The Legislature has enacted a new statute aimed at preventing dissemination of obscene materials to minors, 1978 PA 33, which contains precise definitions of the types of sexual conduct the depiction or description of which may be deemed obscene. Its passage demonstrates that the Legislature is not at a loss for innovative responses to the problems posed by the decision in *Miller*. The new statute, however, so clearly designed to avoid any constitutional problems existing under the former statute, applies *only* to minors. The legislative inaction with respect to the regulation of sexually oriented materials disseminated to consenting adults assumes a greater significance in light of the specificity which the Legislature has demonstrated in its effort to devise a constitutional regulation of obscenity with respect to minors. Whatever the legislative policy may once have been, the Legislature's intent as presently manifested is sufficiently ambiguous to warn the Court against trying to rescue the statute by reluctantly adopting an interpretation allegedly mandated by a clear legislative purpose. The Court's decision supplies a legislative intent which the Legislature itself was unwilling to express despite the Court's advice and its previous refusal to construe the statute with respect to consenting adults.

4. It is one thing to judicially construe legislation that legitimately and by fair inference admits of only two constructions, one constitutional and the other not. Courts will rightly opt for the former. But that is not what the Court is asked to do in this case. The United States Supreme Court has determined that statutes regulating sexually oriented material must specifically define the sexual conduct depicted or described in "obscene" materials. The Michigan obscenity statute does not enumerate specific kinds of sexual conduct, but proscribes obscene depiction or description of *all* sexual conduct. In an effort to save the statute, the Court chooses which depictions or descriptions of various types of sexual conduct are to be read into the statute and does so without legislative guidance. The danger of such an exercise of judicial power is that the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.

5. The United States Supreme Court did not require state courts to follow the definitions which were approved by it in

*Miller v California.* That choice is left to each state. There being no principled basis for choosing between the many and varied constitutionally acceptable definitions of sexual conduct, it is particularly inappropriate for the judiciary to make an unguided, arbitrary choice. The choice should be made by the Legislature and the Court should not usurp its prerogative. The Court should refuse to enforce the obscenity statute until the Legislature complies with the *Miller* mandate and, as it has done with the obscenity statute relating to minors, explicitly defines that sexual conduct which may not be obscenely depicted or described. .

OPINION OF THE COURT

1. OBSCENITY — CONSTITUTIONAL LAW — FREE SPEECH.

   The Supreme Court of the United States has simultaneously reaffirmed its position that obscenity is not constitutionally protected speech and fashioned a new, more restrictive definition of constitutionally protected speech (US Const, Am I).

2. OBSCENITY — CONSTITUTIONAL LAW — STATUTES — POLICE POWER.

   There are legitimate state interests at stake in stemming the tide of commercialized obscenity, even assuming it is feasible to enforce effective safeguards against exposure to juveniles and to passersby, so that the state may through its police power regulate obscene materials which are displayed only to consenting adults (US Const, Am I; Const 1963, art 1, § 5).

3. OBSCENITY — CONSTITUTIONAL LAW — STATES — STATUTES.

   State statutes designed to regulate obscene materials must be specifically defined and carefully limited either as written or as authoritatively construed by the state courts (US Const, Am I; Const 1963, art 1, § 5).

4. OBSCENITY — CONSTITUTIONAL LAW — STATES — STATUTES — POLICE POWER.

   States may not use their police powers to regulate speech in a more restrictive fashion than allowed by the Supreme Court of the United States under the guarantees of the First and Fourteenth Amendments; that Court did not undertake to tell the states what they must do, but rather to define the area in which they may chart their own course in dealing with obscene materials (US Const, Am I; US Const, Am XIV).

5. OBSCENITY — DEFINITION — CONSTITUTIONAL LAW — STATUTES.

   The criminal obscenity statutes of Michigan are vague and overbroad, and therefore unconstitutional on their face, because to

define obscenity for constitutional purposes *solely* in terms of the capacity of the material to excite sexual thoughts or desires is clearly incompatible with the detailed constitutional standards announced by the Supreme Court of the United States (US Const, Am I; Const 1963, art 1, § 5; MCL 750.343a, 750.343b; MSA 28.575[1], 28.575[2]).

6. STATUTES — CONSTRUCTION — CONSTITUTIONAL LAW.

Courts must presume that all legislation is constitutional and will attempt to construe legislation so as to preserve its constitutionality because the courts are duty bound under the Constitution to preserve the laws of the state.

7. CONSTITUTIONAL LAW — FREE SPEECH — FOURTEENTH AMENDMENT.

The First Amendment right to freedom of speech is guaranteed to citizens of the states by the Fourteenth Amendment (US Const, Am I; US Const, Am XIV).

8. CONSTITUTIONAL LAW — FREE SPEECH.

The freedom of expression clause of the Michigan Constitution may confer greater protection than its Federal counterpart in certain instances; however, the right to freedom of expression in Michigan is not unlimited, and obscenity, as presently defined by the Supreme Court of the United States, represents an abuse of the right which, therefore, does not fall within the purview of the protection assured (US Const, Am I; Const 1963, art 1, § 5).

9. CONSTITUTIONAL LAW — CONSTRUCTION.

Constitutional provisions must be interpreted within the context of the times because the drafters of such provisions could not anticipate all societal needs.

10. OBSCENITY — STATUTES — PUBLIC POLICY.

The Legislature has decided, as a matter of public policy, to proscribe the dissemination of obscene materials because it has determined that the dissemination of obscene materials within this state is injurious to society; that public policy is a mandate upon the courts that the state should not be left without a valid criminal obscenity statute and that the courts should construe a statute which lacks specificity so that it conforms to minimum constitutional standards (US Const, Am I; Const 1963, art 1, § 5; MCL 750.343a; MSA 28.575[1]).

11. OBSCENITY — WORDS AND PHRASES — CONSTITUTIONAL LAW — STATUTES.

The standards to be employed by the trier of fact in determining

what is obscene are 1) whether the average person, applying contemporary community standards would find the work, taken as a whole, appeals to the prurient interest; 2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and 3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value (US Const, Am I; Const 1963, art 1, § 5; MCL 750.343a; MSA 28.575[1]).

12. OBSCENITY — WORDS AND PHRASES — CONSTITUTIONAL LAW — STATUTES.

The terms "obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic", as used in the obscenity statutes, are construed to incorporate the definitions announced by the Supreme Court of the United States: 1) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and 2) patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals (US Const, Am I; Const 1963, art 1, § 5; MCL 750.343a; MSA 28.575[1]).

OPINION CONCURRING IN PART AND DISSENTING IN PART BY KAVANAGH, J.

13. OBSCENITY — CONSTITUTIONAL LAW — STATUTES.

*The criminal obscenity statute as written and construed is unconstitutional because it does not specifically define the proscribed materials or carefully limit its application to incorporate the minimum constitutional standards set forth by the Supreme Court of the United States (US Const, Am I; MCL 750.343a; MSA 28.575[1]).*

14. OBSCENITY — CONSTITUTIONAL LAW — STATUTES.

*The criminal obscenity statute is unconstitutionally vague because people of common intelligence must necessarily guess at its meaning and differ as to its application; it is overbroad because the wide sweep of its proscription infringes upon free speech rights (US Const, Am I; US Const, Am XIV; MCL 750.343a; MSA 28.575[1]).*

15. OBSCENITY — STATUTES — LEGISLATIVE INTENT.

*Legislative intent with respect to obscenity was not frozen as of the date of passage of the criminal obscenity statute; for over three years after the Supreme Court declined to construe the obscenity statute to prohibit dissemination of obscene materials to consenting adults, the state had no effective obscenity stat-*

ute applicable to consenting adults but the Legislature, despite notice from the Supreme Court that further legislative expression might be required, chose to abide the situation (MCL 750.343a; MSA 28.575[1]).

16. Obscenity — Statutes — Legislative Intent.

The passage of the statute preventing dissemination of obscene materials to minors with precise definitions of the proscribed materials demonstrates that the Legislature is not at a loss for innovative responses to the decisions announced by the Supreme Court of the United States on First Amendment issues; the statute applies only to minors, which shows that the Legislature was unwilling to act, despite advice from the courts, to regulate sexually oriented materials disseminated to consenting adults (MCL 722.671 et seq., 750.343a; MSA 25.254[1] et seq., 28.575[1]).

17. Criminal Law — Statutes — Construction — Constitutional Law.

Courts, when faced with two competing interpretations, one constitutional and the other unconstitutional, are under a duty to preserve the constitutionality of the statute by choosing the constitutional interpretation; however, they should not, without legislative guidance, introduce words of limitation into a penal statute so as to make it constitutionally specific.

18. Criminal Law — Statutes — Constitutional Law — Separation of Powers.

The Legislature should not be able to set a net large enough to catch all possible offenders and leave it to the courts to say who could be rightfully detained; this would, to some extent, substitute the judicial for the legislative department of the government.

19. Obscenity — Statutes — Constitutional Law.

The Supreme Court of the United States has indicated that states could construe their obscenity statutes along the lines of the definitions which it approvingly set forth without violating the Federal Constitution but did not require state courts to follow such a path; that choice is left to each state and it appears that the Court also gave qualified approval to obscenity statutes which adopt other definitions (US Const, Am I).

20. Obscenity — Constitutional Law — Statutes — Construction.

There being no principled basis for choosing between the many and varied constitutionally acceptable definitions of sexually oriented material which a state could regulate under an ob-

*scenity statute, it is particularly inappropriate for the judiciary to make an unguided, arbitrary choice; the choice should be made by the Legislature, and the courts should not usurp its prerogative (US Const, Am I; MCL 750.343a; MSA 28.575[1]).*

21. OBSCENITY — CONSTITUTIONAL LAW — STATUTES.

*The Supreme Court should refuse to enforce the criminal obscenity statute until the Legislature complies with the constitutional mandate announced by the Supreme Court of the United States and, as it has done with the obscenity statute relating to minors, explicitly defines that sexual conduct which may not be obscenely depicted or described (US Const, Am I; MCL 722.671 et seq., 750.343a; MSA 25.254[1] et seq., 28.575[1]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lawrence J. Bunting,* Assistant Prosecuting Attorney, for the people.

*Taylor & Rubin* for defendant.

Amici Curiae:

*Edward M. Wise,* General Counsel, for American Civil Liberties Union Fund of Michigan.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas C. Nelson,* Assistant Attorney General, for the Department of Attorney General.

BLAIR MOODY, JR., J. The sole issue before this Court is whether the Michigan criminal obscenity statute, MCL 750.343a; MSA 28.575(1), which proscribes the knowing dissemination of obscene materials, is constitutionally valid and enforceable on its face as it pertains to consenting adults under the First Amendment of the United States Consti-

tution[1] and Article 1, § 5, Michigan Constitution of
1963.[2] Today this Court authoritatively construes
the Michigan criminal obscenity statute as consti-
tutionally proscribing the knowing dissemination
of obscene materials to consenting adults. *Miller v
California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d
419 (1973).

## I. FACTS

On October 21, 1975, defendant Neumayer was
charged in the 50th District Court with two counts
of violating MCL 750.343a; MSA 28.575(1). Specifi-
cally, the charges were possession with intent to
show and showing two motion pictures ("All the
Way" and "Final Blow") at the Campus Theatre in
Pontiac, Michigan.

On January 13, 1976, after a jury trial, the
defendant was convicted on the "showing" count
and he was sentenced on February 10, 1976, to two
years probation. The "possession" count was dis-
missed by the district court judge.

Defendant appealed his conviction to the Oak-
land Circuit Court. The circuit court reversed the
conviction, holding that the instant criminal ob-
scenity statute applied only to the dissemination of
obscene materials to juveniles and unconsenting
adults but not to consenting adults.

The Michigan Court of Appeals denied leave to
appeal, citing as authority *People v Bloss,* 394

[1] "Congress shall make no law respecting an establishment of
religion, or prohibiting the free exercise thereof; or abridging the
freedom of speech, or of the press; or the right of the people peaceably
to assemble, and to petition the Government for a redress of griev-
ances."

[2] "Every person may freely speak, write, express and publish his
views on all subjects, being responsible for the abuse of such right;
and no law shall be enacted to restrain or abridge the liberty of
speech or of the press."

Mich 79; 228 NW2d 384 (1975), and *Kent County Prosecutor v Robert Emmett Goodrich Corp,* 53 Mich App 267, 275; 218 NW2d 771 (1974), *aff'd* 396 Mich 253; 240 NW2d 242 (1976).

Upon appeal to this Court, the instant case was held in abeyance pending a decision in *People v Llewellyn,* 401 Mich 314; 257 NW2d 902 (1977).[3] That decision was not dispositive of the issue presented herein, so we granted leave to appeal. 402 Mich 802 (1977).

We reverse the circuit court's determination as to the criminal obscenity statute, but we affirm the reversal of the defendant's conviction because at the time he committed the conduct charged, this Court had not construed the statute to proscribe such conduct.

---

[3] *Llewellyn* was an appeal of convictions for exhibition of two allegedly obscene films under an East Detroit anti-obscenity ordinance. Defendants argued that their convictions must be reversed because the anti-obscenity ordinance in question was pre-empted by the existing state statutory scheme governing criminal obscenity offenses, and was thus unconstitutional under Const 1963, art 7, § 22.

Given the comprehensive coverage of the field under the state statutory scheme, MCL 750.343a *et seq.;* MSA 28.575(1) *et seq.,* and the need for a uniform, statewide definition of criminal obscenity offenses for purposes of protecting free speech and effectively deterring obscenity, this Court held that East Detroit's anti-obscenity ordinance was pre-empted by the existing state statutory scheme and was thus unconstitutional under Const 1963, art 7, § 22.

The Court opined that statewide definition of obscenity allowed for both vigorous, effective local prosecution under state law and the protection of legitimate freedom of expression. Moreover, localities could supplement the protection afforded them under the state obscenity statutory scheme with municipal zoning, such as that recently promulgated in Detroit, designed to regulate the location of establishments featuring so-called "adult entertainment". Such municipal zoning ordinances were declared outside the field of prohibition occupied by the state statutory scheme.

The Court, however, was not presented with and therefore did not reach the question of whether the state criminal obscenity statute *itself* was constitutional.

## II. THE CURRENT STATUS OF THE FEDERAL
## CONSTITUTIONAL LAW ON OBSCENITY

In *Miller v California*,[4] the United States Supreme Court simultaneously reaffirmed its previous position that obscenity is not constitutionally protected speech[5] and fashioned a new, more restrictive definition of constitutionally protected speech.[6] In *Paris Adult Theatre I v Slaton*, 413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973), released with *Miller*, the Court also unequivocally rejected

---

[4] The United States Supreme Court released seven other opinions along with *Miller*. While *Miller* was the principal opinion, the other opinions dealt in detail with related obscenity issues. See *Paris Adult Theatre I v Slaton*, 413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973); *Kaplan v California*, 413 US 115; 93 S Ct 2680; 37 L Ed 2d 492 (1973); *United States v 12 200-ft Reels of Super 8mm Film*, 413 US 123; 92 S Ct 2665; 37 L Ed 2d 500 (1973); *United States v Orito*, 413 US 139; 93 S Ct 2674; 37 L Ed 2d 513 (1973); *Heller v New York*, 413 US 483; 93 S Ct 2789; 37 L Ed 2d 745 (1973); *Roaden v Kentucky*, 413 US 496; 93 S Ct 2796; 37 L Ed 2d 757 (1973); *Alexander v Virginia*, 413 US 836; 93 S Ct 2803; 37 L Ed 2d 993 (1973).

[5] In *Roth v United States*, 354 US 476; 77 S Ct 1304; 1 L Ed 2d 1498 (1957), a five-justice majority, the first of many such narrow majorities in obscenity cases, concluded, through Justice Brennan, that obscenity was not entitled to first amendment protection inasmuch as it was utterly without redeeming social importance. Logically extending from this premise, the Court articulated as the appropriate test for obscenity whether the "dominant theme" of the material challenged "taken as a whole appeals to the prurient interest" of "the average person, applying contemporary community standards". *Roth, supra*, 489. The Court, however offered no criteria through which to reduce such an amorphous concept of obscenity to workable socio-judicial guidelines.

For an extensive historical analysis of the development of obscenity case law, see Lockart & McClure, *Censorship of Obscenity: The Developing Constitutional Standards*, 45 Minn L Rev 5 (1960), and Note, *Constitutional Law—Obscenity*, 40 Brooklyn L Rev 442 (1973).

[6] In *Memoirs v Massachusetts*, 383 US 413; 86 S Ct 975; 16 L Ed 2d 1 (1966), the Court reversed a decision from Massachusetts that *Fanny Hill* was obscene. In so doing, the Court, again under the leadership of Justice Brennan specified that the proper test of obscenity required that the materials challenged must meet each of three Federal constitutional criteria independently: the material must appeal to prurient interests; it must be patently offensive; and it must be "utterly without redeeming social value". This so-called *Roth-Memoirs* test remained as the controlling doctrine until 1973.

the de facto holding of *Redrup v New York,*[7] 386 US 767; 87 S Ct 1414; 18 L Ed 2d 515 (1967), that state police powers could not regulate obscene materials if displayed only to consenting adults. The Court announced that "there are legitimate state interests at stake in stemming the tide of commercialized obscenity, even assuming it is feasible to enforce effective safeguards against exposure to juveniles and to passersby." 413 US 49, 57-58.

After dismantling the *Redrup* protection accorded to materials restrictively displayed, the Court proceeded in *Miller* to broaden the scope of the obscenity standard previously enunciated in *Memoirs v Massachusetts,*[8] 383 US 413; 86 S Ct 975; 16 L Ed 2d 1 (1966).

Under the new *Miller* formulation, the Court declined to "propose regulatory schemes for the States", *Miller, supra,* 25, but instead revised the *Memoirs* test in order to provide guidelines for the trier of fact to determine what is constitutionally obscene:

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest;

"(b) whether the work depicts or describes, in a

---

[7] The plurality opinion in *Memoirs* represented only one of seven approaches taken in that case. The position this opinion occupied in the spectrum of viewpoints allowed it, in effect, to be decisive. But because of the multiplicity of viewpoints, many subsequent cases were decided according to an approach developed in *Redrup v New York.* In *Redrup,* the Court reversed several state convictions, explaining in a *per curiam* opinion that the publications in question were constitutionally protected no matter which of the prevailing views was applied. Thereafter, the Court disposed of 31 obscenity cases in this manner, often giving no explanation other than a citation to *Redrup.*

[8] The *Memoirs* standard was a plurality, not a majority, position. It never gathered majority support but continued to be the controlling definition of obscenity through *Redrup* and until *Miller.*

patently offensive way, sexual conduct specifically defined by the applicable state law; and

"(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (Citations omitted.) 413 US 15, 24.

Concomitant with its expansion of the scope of unprotected speech, the Court's majority emphasized that state statutes designed to regulate obscene materials must be "specifically defined" and "carefully limited" either as written or *as authoritatively construed by the state courts.* The Court offered two examples "of what a state statute could define for regulation under the second part (b) of [the *Miller* test]":

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 US 15, 25.

See, also, *United States v 12 200-ft Reels of Super 8mm Film,* 413 US 123, 130, fn 7; 92 S Ct 2665; 37 L Ed 2d 500 (1973).

The majority was also careful to point out that its entire consideration of the question of obscenity was limited to the minimum protections afforded by the United States Constitution. That is, the Court did not "undertake to tell the States what they must do, but rather to define the area in which they may chart their own course in dealing with obscene materials". 413 US 49, 53-54. Therefore, under the guarantees of the First and Fourteenth Amendments, the states may not use their

police powers to regulate speech in a more restrictive fashion than allowed by *Miller et al.*[9]

## III. The Constitutionality of the Michigan Obscenity Statute Under Current Federal and State Law

The Michigan criminal obscenity statute, 1957 PA 265 as amended, MCL 750.343a; MSA 28.575(1), prohibits the knowing dissemination (or possession with intent to disseminate) of obscene materials:

"Any person who knowingly either sells, lends, gives away, distributes, shows or transmutes or offers either to sell, lend, give away, distribute, show or transmute, or has in his possession with intent either to sell, lend, give away, distribute, show or transmute, or advertise in any manner, or who otherwise knowingly offers for either loan, gift, sale or distribution, any obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic book, magazine, pamphlet, newspaper, story paper, writing, paper, phonograph record, picture, drawing, photograph, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of an indecent character which may or may not require mechanical or other means to be transmuted into auditory, visual or sensory representations of such character, shall be guilty of a misdemeanor, and upon conviction shall be punished by imprisonment in the county jail for not more than 1 year or by a fine of not more than $1,000.00, or by both such fine and imprisonment.

"For the purpose of this section, possession of 6 or more identical copies, or 6 or more articles of any obscene, lewd, lascivious, filthy or indecent book, magazine, pamphlet, newspaper, story paper, writing, paper, phonograph record, picture drawing, photograph, slide, motion picture film, figure, image, wire or tape record-

[9] See fn 4.

ing, or any written, printed or recorded matter of an indecent character, shall be prima facie evidence of possession with intent to sell, lend, give away, distribute, show or transmute the thing."

The standard to be employed by the trier of fact in determining whether certain materials are "obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic" is found in MCL 750.343b; MSA 28.575(2) (1958 PA 127):

"The test to be applied in cases under section 343a of this act shall not be whether sexual desires or sexually improper thoughts would be aroused in those comprising a particular segment of the community, the young, the immature or the highly prudish, or would leave another segment, the scientific or highly educated or the so-called worldly wise and sophisticated, indifferent and unmoved. But such test shall be the effect of the book, picture or other subject to complaint considered as a whole, not upon any particular class, but upon all those whom it is likely to reach, that is, its impact upon the average person in the community. The book, picture or other subject of complaint must be judged as a whole in its entire context, not by considering detached or separate portions only, and by the standards of common conscience of the community of the contemporary period of the violation charged."

In *People v Bloss, supra,* this Court was first presented with an opportunity to examine these two statutes in light of the test set forth in *Miller, supra.* However, the Court declined the invitation to decide whether the statutes could be validly applied to the dissemination of obscene material to consenting adults:

"We are persuaded that defendant's conviction cannot stand for the reason that at the time he did the act complained of this Court had not construed the obscen-

ity statute (as permitted in *Miller)* to proscribe such conduct.

"We are unanimously of the opinion that the Michigan statutes regulating the dissemination of 'obscene' material as applied to juveniles and unconsenting adults are valid and enforceable.

"We are divided as to whether such statutes can properly be construed by us without further legislative expression as proscribing the dissemination of 'obscene' material to consenting adults. See Const 1963, art 1, § 5."

The people once again invite us, and indeed argue that we are compelled, to "authoritatively construe" the foregoing statutes so as to conform to the *Miller* standards and thus preserve their constitutionality. *Miller, supra,* 24, fn 6. Also see *Hamling v United States,* 418 US 87, 112-116; 94 S Ct 2887; 41 L Ed 2d 590 (1974), and *Ward v Illinois,* 431 US 767; 97 S Ct 2085; 52 L Ed 2d 738 (1977).

The defendant maintains that the instant statutes are constitutionally vague and overbroad, and fail to incorporate the minimum constitutional requirements set forth in *Miller.* Furthermore, the defendant contends that these statutes cannot be authoritatively construed to conform to *Miller* because the Michigan Constitution of 1963, art 1, § 5, contains a less restrictive definition of freedom of speech than that found in the First Amendment of the United States Constitution.

*A. Vagueness and Overbreadth: Miller*

Even a cursory comparison of the Michigan criminal obscenity statutes with the detailed requirements set forth in *Miller* reveals that the statutes lack the specificity required of a statute which seeks to regulate speech and thus unquestionably fail to pass Federal constitutional muster.

The terms employed in MCL 750.343a; MSA 28.575(1)—"obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic"—are neither "specifically defined" nor "carefully limited" as constitutionally required of any statute designed to regulate speech or expression. *Miller, supra.*

Likewise, MCL 750.343b; MSA 28.575(2) does not contain, *inter alia,* the necessary limitation that the material in question lack "serious literary, artistic, political, or scientific value" in order to be found obscene. *Miller, supra.* Insofar as this statute defines "obscenity", it appears to adopt the since-abandoned test announced in *Roth v United States, supra,* by asking "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest". 354 US 476, 489.

To define obscenity for constitutional purposes *solely* in terms of the capacity of the material to excite sexual thoughts or desires is clearly incompatible with *Miller v California.* Under *Miller,* statutes designed to suppress obscene material must, as written or construed, be limited not only to works which (a) appeal to prurient interests, but also to those which (b) depict or describe, "in a patently offensive way, sexual conduct specifically defined by the applicable state law", and which (c) taken as a whole, lack "serious literary, artistic, political, or scientific value".

MCL 750.343a; MSA 28.575(1) and MCL 750.343b; MSA 28.575(2) are not so limited. These statutes are vague and overbroad,[10] and therefore

---

[10] Clarity in the law is a prime requisite of due process. A criminal statute will be found vague and thus void on its face if it fails to provide fair notice of what the state commands or forbids or if it invites arbitrary and erratic enforcement. This is quite apart from whether or not it interferes with liberty of speech or expression.

A law suppressing speech is subject, however, to especially strict

unconstitutional on their face, as the people concede.[11]

## B. Michigan Constitution of 1963, Article 1, § 5

It is clear, as the defendant contends and the people concede, that the Michigan criminal obscenity statute, as presently written, is unconstitutionally vague and overbroad under First Amendment and *Miller* analysis. However, the people urge us to "construe" this obscenity statute, as *Miller* expressly permits,[12] to conform to the *Miller* stan-

standards of specificity. Freedom of expression is vulnerable to greatly damaging but barely visible encroachments. Vague prohibitions engender the possibility that people will restrict their conduct only to that which is unquestionably safe. Free speech may not be so chilled. Thus even greater clarity and precision than in other contexts is required of statutes regulating expression.

In this respect, the problem of vagueness in the area of protected expression is closely related to that of overbreadth. A law may be unconstitutionally overbroad, even though perfectly definite, if its terms deter the exercise of rights protected by the First Amendment. Such a law is also void on its face; even a litigant whose conduct falls outside the First Amendment may assert that the statute applied against him is unconstitutionally overbroad. See amicus curiae brief of the American Civil Liberties Union Fund of Michigan, p 7.

[11] People's brief, p 19.

[12] Some, but not all, states have accepted the Court's invitation to "*Miller*-ize" their existing statutes.

The Harvard Law Review compiled an impressive state-by-state survey of what the various states had done in this regard as of 1975:

"Some state courts have regarded the *Miller* requirement that obscenity laws specifically define potentially offensive depictions or descriptions of sexual conduct as necessitating the invalidation of pre-*Miller* obscenity laws. See *Commonwealth v Horton,* [365 Mass 164] 310 NE2d 316, 319-322 (1974); *Art Theater Guild, Inc v State,* 510 SW2d 258, 260-261 (Tenn, 1974); *Mohney v State,* [261 Ind 56] 300 NE2d 66, 67 (1973); *State v Wedelstedt,* 213 NW2d 652, 656-657 (Iowa, 1973); *State v Shreveport News Agency, Inc,* 287 So 2d 464, 468-470 (La, 1973). In Louisiana, Massachusetts, and Tennessee, state legislatures enacted replacement obscenity statutes satisfying the *Miller* specificity requirement. See La Rev Stat Ann § 14:106 (West 1974); Mass Gen Laws Ann, ch 272, § 31 (1975); Tenn Code Ann § 39-3010 (Supp 1974). The Iowa legislature elected to do without a statute criminally punishing distribution of obscenity to consenting adults, but instead passed a law prohibiting dissemination of obscenity to minors. See ch 1267, [1974] Iowa Acts 977. In Indiana, local ordinances have filled the gap left by invalidation of the state statute. See Note, *Defects in Indiana's Pornographic Nuisance Act,* 49 Ind L J 320,

331 (1974). Other state courts, however, dealing with essentially similar statutes, have held that the requisite specificity may be achieved through judicial construction. Many of the courts engaging in statutory construction simply read into state obscenity laws *Miller's* examples of specific definitions, see 413 US at 25. See, *e.g., Pierce v State*, 292 Ala 473, 477; 296 So 2d 218, 221 (1974), *cert den* [419 US 1130] (1975); *Gibbs v State*, [255 Ark 997] 504 SW2d 719, 725-726 (1974); *State v Welke*, 298 Minn 402, 409; 216 NW2d 641, 646-647 (1974); *State v DeSantis*, 65 NJ 462, 471-472; 323 A2d 489, 495 (1974); *State v Bryant*, 285 NC 27, 40; 203 SE2d 27, 35 *cert den*, 419 US 974 (1974); *State v Watkins*, [262 SC 178] 203 SE2d 429, 432-433 (1973), *app dis*, 418 US 911 (1974).

"In a few states, however, judicial specification has been more elaborate. See, *e.g., State v Harding*, [114 NH 335] 320 A2d 646, 651 (1974) (listing six categories of 'potentially offensive "sex" or "sexual conduct" '); *State v J-R Distrib, Inc*, 82 Wash 2d 584, 601-602; 512 P2d 1049, 1060-1061 (1973), *cert den*, 418 US 949 (1974) (adding bestiality to categories listed in *Miller* examples); *State ex rel Chobot v Circuit Court*, 61 Wis 2d 354, 369-370; 212 NW2d 690, 698 (1973), *modified on other grounds*, 61 Wis 2d 374a; 212 NW2d 701 (1974) (same). Courts have found judicial reconstruction unnecessary in some cases, either because statutory language was thought to be sufficiently specific already, see, *e.g., Ballew v State*, 292 Ala 460, 464; 296 So 2d 206, 209 (1974), *cert den*, [419 US 1130] (1975); *State v Aiuppa*, 298 So 2d 391, 396-397 (Fla, 1974); *State v Little Art Corp*, 191 Neb 448, 451-452; 215 NW2d 853, 856 (1974); *State ex rel Wampler v Bird*, 499 SW2d 780, 784 (Mo, 1973) (per curiam); *State ex rel Keating v "Vixen,"* 35 Ohio St 2d 215, 218-219; 301 NE2d 880, 882 (1973), or because prior construction had seemingly confined a statute's scope within the *Miller* limits, see, *e.g., People v Enskat*, 33 Cal App 3d 900, 908-909; 109 Cal Rptr 433, 438-439 (1973), *cert den*, 418 US 937 (1974); *Rhodes v State*, 283 So 2d 351, 357-359 (Fla, 1973); *Slaton v Paris Adult Theater I*, 231 Ga 312, 316; 201 SE2d 456, 459 (1973), *cert den*, 418 US 939 (1974); *People v Heller*, 33 NY2d 314, 327-328; 307 NE2d 805, 812-813; 352 NYS2d 601, 612-613 (1973), *cert den sub nom, Buckley v New York*, 418 US 944 (1974); *Price v Commonwealth*, [214 Va 490] 201 SE2d 798, 800 (1974), *cert den*, 419 US 902 (1974).

"Some state legislatures have independently responded to the *Miller* specificity requirement, in a few instances enacting new statutes even though courts had either approved the specificity of the prior law, or had construed that law to meet *Miller's* requirement. See, *e.g.,* Ky Rev Stat § 531.010 (1975) (Penal Code); NY Penal Law § 235.00 (McKinney Supp 1974); NC Gen Stat § 14-190.1 (Supp 1974); Ohio Rev Code Ann § 2907.01 (Page Supp 1973). In a few instances, legislatures apparently moved in advance of state courts. See, *e.g.,* Ariz Rev Stat Ann § 13-531.01 (Supp 1974); SD Compiled Laws Ann § 22-24-27 (Supp 1974).

"Following the Supreme Court's dictum in *United States v 12 200-Ft Reels of Super 8mm Film* 413 US 123, 130, fn 7 (1973), federal obscenity statutes have been judicially construed to satisfy the specificity requirement through incorporation of the *Miller* examples. See, *e.g., Hamling v United States*, 418 US 87, 114 [94 S Ct 2887; 41 L Ed

dards and thus prospectively preserve its constitutionality.[13]

It is axiomatic that this Court will presume that all legislation is constitutional and will attempt to construe legislation so as to preserve its constitutionality:

"We are duty bound under the Michigan Constitution to preserve the laws of this state and to that end to construe them if we can so that they conform to Federal and state constitutional requirements." *People v Bricker,* 389 Mich 524, 528; 208 NW2d 172 (1973).

The First Amendment provides in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech."

This First Amendment right to freedom of speech is guaranteed to citizens of the states by the Fourteenth Amendment. *Book Tower Garage, Inc v Local No 415, International Union, UAWA(CIO),* 295 Mich 580, 586; 295 NW 320 (1940).

But, as we discussed earlier, the United States Supreme Court has determined that obscenity is *not* within the scope of speech protected by the

2d 590] (1974) (construing 18 USC 1461 [1970]); *United States v Thevis,* 484 F2d 1149, 1155 (CA 5, 1973), *cert den,* 418 US 932 (1974) (construing 18 USC 1462 [1970]); *United States v Marks,* 364 F Supp 1022, 1026 (ED Ky, 1973) (construing 18 USC 1465 [1970]); *United States v One Reel of Film,* 481 F2d 206, 209-210 (CA 1, 1973) (construing 19 USC 1305[a] [1970])."

Note, *Community Standards, Class Actions, and Obscenity Under Miller v California,* 88 Harv L Rev 1838, fn 51, 1847-1848 (1975).

[13] Since this Court previously refused to construe the criminal obscenity statute vis-à-vis consenting adults, *People v Bloss, supra,* and since the statute as presently written is vague and overbroad, we can only *"Miller*-ize" the statute prospectively.

It would be an obvious denial of due process to hold any defendant, including defendant Neumayer, criminally ("knowingly") responsible for conduct charged before today's construction of the statute.

First Amendment. *Miller, supra,* 23. Therefore, we hold that the Michigan criminal obscenity statute, under the authoritative construction as to definitional limits[14] given it today, does not conflict with the First Amendment.

However, the freedom of expression guarantee found in the Michigan Constitution is phrased somewhat differently:

"Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5.

The defendant, among others,[15] urges us to hold that Michigan's freedom of expression clause has a wider scope than the First Amendment and confers greater protection than its Federal counterpart on the dissemination of obscene materials to consenting adults.[16]

[14] The *Miller* "definitional limits" represent minimum protections. The Legislature is still free to enact a criminal obscenity statute which would afford greater protection to certain types of speech. It could conceivably determine to remove any restrictions upon obscenity whatsoever. The State may not use its police power, however, to regulate certain forms of speech in a more restrictive fashion than allowed in today's opinion. See *New Hampshire v Manchester News Co, Inc,* 387 A2d 324 (1978).

[15] See, for example, Norris, *A "Freedom of Expression" in the New Constitution,* 31 Detroit Lawyer 190 (1963); Burkoff & Adamo, *Obscenity Under the Michigan Constitution: Protected Expression?,* 54 Mich St B J 964, 969-973 (1975).

[16] This Court has determined in various cases that the Michigan Constitution confers greater protection than its federal counterpart. See, *inter alia, People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975); *People v White,* 390 Mich 245; 212 NW2d 222 (1973); *People v Den Uyl,* 318 Mich 645; 29 NW2d 284 (1947); *People v Victor,* 287 Mich 506; 283 NW 666 (1939).

Also *cf.* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv L Rev 489 (1977); Howard, *State Courts and Constitutional Rights in the Day of the Burger Court,* 62 Va L Rev 873 (1976).

While we agree that, in certain instances, the Michigan Constitution may confer broader protection upon certain types of expression, we do not agree that the right to freedom of expression in Michigan is unlimited.

Furthermore, upon careful examination, we find nothing either in the provision itself or in the history[17] of the constitutional convention which even remotely leads us to believe the drafters intended to afford obscenity unlimited constitutional protection.

On the contrary, the phrase "being responsible

---

[17] The "freedom of expression" provision of our present constitution differs in two relevant respects with the earlier Constitution of 1908. The word "express" was added to the section, and the word "views" was substituted for "sentiments". The changes were explained to the delegates by committee comment:

"The committee believes that the multiplicity of contemporary means of expression (as over and against the traditional means of speaking and writing) justifies the first change, while the word 'views' seems to have a sharper and more specific meaning than the former word sentiments."

See 1 Official Record, Constitutional Convention 1961, Committee Proposal 15, § 4 (Const 1963, art 1, § 5), p 466.

Furthermore, in the "Address to the People", the publication which informs voters of the purpose of constitutional provisions, it was stated:

"This is a revision of Sec 4, Article II, of the present constitution preserving these traditional guarantees. It broadens them by including the word 'express' and substituting the word 'views' for 'sentiments'. Addition of the word 'express' is intended to recognize development of new means of communication in recent years. The word 'views' seems to have a sharper and more specific meaning than the former word 'sentiments.' "

See 2 Official Record, Constitutional Convention 1960, Address to the People, p 3363.

To assist in determining the purpose sought to be accomplished by a constitutional provision, the convention debates and the Address to the People may be consulted. *Regents of the University of Michigan v Michigan,* 395 Mich 52; 235 NW2d 1 (1975); *Burdick v Secretary of State,* 373 Mich 578; 130 NW2d 380 (1964).

It should not be overlooked that even a display of "specifically defined" obscene material under the *Miller* standard would not be obscene in the constitutional sense and therefore not proscribed if the work, taken as a whole, possesses serious literary, artistic, political or scientific value.

for the abuse of such right" indicates that the drafters foresaw situations in which certain types of speech would not fall within the protection guaranteed by the provision. We believe that obscenity, as presently defined by the United States Supreme Court, represents an "abuse of such right" and therefore does *not* fall within the purview of the protection assured.

Additionally, we must not forget that constitutional provisions must be interpreted within the context of the times. *Weems v United States,* 217 US 349; 30 S Ct 544; 54 L Ed 793 (1910). The drafters of such provisions, even those who drafted such provisions as recently as the early 1960's, could not anticipate all societal needs. The proliferation of obscene publications and films together with the commercial establishments which deal in such items have become commonplace in many areas and, as such, constitute a blight on our commercial and residential neighborhoods.

The Legislature has determined that the dissemination of obscene materials within this state is injurious to society. Therefore, the Legislature has decided, as a matter of public policy, to proscribe the dissemination of obscene materials. "The public policy of this state is a mandate upon us." *Bricker, supra,* 529.

We do not agree that the intervening[18] 1963 Michigan Constitution, art 1, § 5, provides greater protection for the knowing dissemination of obscene materials to consenting adults than that afforded by the First Amendment of the United States Constitution. Nor do we find any indication of legislative intent that the instant statute be applied only to the dissemination of obscene mate-

---

[18] The Constitution of 1963 was promulgated almost six years after the criminal obscenity statute was enacted (1957 PA 265).

rials to juveniles and unconsenting adults, but not to consenting adults. See *Bloss, supra.*

## IV. Conclusion

Despite prior suggestions from this Court[19] that the Legislature revise the present criminal obscenity statute in light of *Miller v California, supra,* to provide a specific definition of obscenity and specific standards for the trier of fact in determining what is constitutionally obscene, the Legislature has not seen fit to act in this regard.[20]

However, in view of previously expressed legislative public policy, we refuse to leave Michigan without a valid criminal obscenity statute. Therefore, with some reluctance,[21] we announce today

---

[19] *People v Bloss, supra; People v Llewellyn, supra,* 322, fn 3.

[20] On February 24, 1978, the Governor signed 1978 PA 33 prohibiting the dissemination of sexually explicit material to minors (effective June 1, 1978).

The Legislature has not acted regarding the dissemination of obscene materials to unconsenting and consenting adults. The uncertainty of the Legislature regarding the constitutionality of legislation in this field prompted House Resolution No 440, adopted April 24, 1978, requesting the opinion of the Supreme Court as to the constitutionality of 1978 PA 33.

[21] We reluctantly take today's action. The Court has only two options at this point in time: *"Miller*-ize" the existing statute or declare it unconstitutional under Federal and state law. We perceive the *Miller* approach to be the less offensive option because it does not leave Michigan without a criminal obscenity statute.

However, we would have preferred that the Legislature pass a new comprehensive state criminal obscenity statute. We would still encourage the Legislature to enact a new statute because, while we view the *Miller* approach as less offensive, we are not convinced *Miller* presents a viable solution to the problem.

The history of the obscenity problem post-*Miller* indicates that we are no closer to a solution of this thorny legal problem at either the federal or state level.

Nevertheless, as stated by Chief Justice Earl Warren:

"In this and other cases in this area of the law, which are coming to us in ever-increasing numbers, we are faced with the resolution of rights basic both to individuals and to society as a whole. Specifically, we are called upon to reconcile the right of the Nation and of the States to maintain a decent society and, on the other hand, the right

that prospective from the date of this opinion the courts of this state shall construe MCL 750.343a; MSA 28.575(1), so that it conforms to the minimum standards set forth in *Miller v California, supra.*

Specifically, we hold that the standards to be employed by the trier of fact in determining what is constitutionally obscene are those formulated in *Miller:*[22]

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest;

"(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

"(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (Citations omitted.) 413 US 15, 24.

Furthermore, in defining the terms "obscene, lewd, lascivious, filthy or indecent, sadistic or masochistic", MCL 750.343a; MSA 28.575(1), we incorporate the *Miller* definitions into the existing statute:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

---

of individuals to express themselves freely in accordance with the guarantees of the First and Fourteenth Amendments.

\* \* \*

"No government—be it federal, state, or local—should be forced to choose between repressing all material, including that within the realm of decency, and allowing unrestrained license to publish any material, no matter how vile. There must be a rule of reason in this as in other areas of the law, and we have attempted \* \* \* to provide such a rule." *Jacobellis v Ohio,* 378 US 184, 199-200; 84 S Ct 1676; 12 L Ed 2d 793 (1964).

[22] These standards are to be employed by the trial courts in lieu of the jury instruction found in MCL 750.343b; MSA 28.575(2).

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 US 15, 25.

In conclusion, we reverse the circuit court's determination that the instant criminal obscenity statute has no applicability to the dissemination of obscene materials to consenting adults. As for defendant Neumayer, we affirm the circuit court's reversal of his conviction because at the time he committed the conduct charged, this Court had not construed the statute per *Miller* to proscribe such conduct.

COLEMAN, C.J., and WILLIAMS, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

KAVANAGH, J. *(concurring in part; dissenting in part).* The question before the Court is whether the Michigan criminal obscenity statute, MCL 750.343a; MSA 28.575(1), violates the First Amendment to the United States Constitution, or Const 1963, art 1, § 5. We all agree that the statute as written and heretofore construed is unconstitutional and therefore reverse the defendant's conviction. The majority, however, "authoritatively construes" the statute to prospectively incorporate the minimum constitutional standards set forth in *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973).

We dissent from the Court's prospective interpretation of the statute because we find no clear legislative intent to preserve the criminal obscenity statute as applied to consenting adults or any principled basis on which this Court can choose between various acceptable definitions of what

depictions or descriptions of sexual conduct are hereafter to be deemed obscene under the statute.[1]

## I

In *Miller v California, supra,* pp 23-24, the United States Supreme Court set forth the minimum requirements of the First Amendment in the area of obscenity regulation, stating:

"State statutes designed to regulate obscene materials must be carefully limited. [Citation omitted.] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. *That conduct must be specifically defined* by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." (Emphasis supplied.)

The Michigan statute, as the majority points out, is unquestionably inadequate. The statute neither specifically defines the conduct forbidden to be obscenely depicted or described, nor is the statute carefully limited in its application. It is, in short, both vague and overbroad. The statute is vague because people of "common intelligence must necessarily guess at its meaning and differ as to its application". It is overbroad because the wide sweep of its proscription infringes upon free speech rights. *Zwickler v Koota,* 389 US 241, 249-250; 88 S Ct 391; 19 L Ed 2d 444 (1967).

---

[1] Inasmuch as we find the majority's construction of the statute harmonizing it with the standards of *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), unwarranted, we do not reach the question whether that construction comports with Const 1963, art 1, § 5.

Nonetheless, the majority "with some reluctance" finds support for its preservation of the criminal obscenity statute "in view of previously expressed legislative public policy". In essence, the Court adheres to a position that the obscenity statute manifests a clear legislative intent to proscribe obscenity to an extent consistent with constitutional limitations, thereby allowing the Court to find legislative approval for whatever interpretation is necessary to preserve the constitutionality of the statute.

Legislative intent with respect to obscenity was not frozen as of 1957, the date of passage of MCL 750.343a; MSA 28.575(1).

This Court has twice specifically mentioned that the Legislature could "supplement the state's statutory scheme proscribing the dissemination of obscene materials" in light of the United States Supreme Court's decision in *Miller. People v Llewellyn,* 401 Mich 314, 322, fn 3; 257 NW2d 902 (1977); *People v Bloss,* 394 Mich 79, 81; 228 NW2d 384 (1975). The subsequent legislative inaction with respect to the dissemination of obscene material to consenting adults is particularly important in light of this Court's decision in *Bloss.*

In *Bloss* the Court found that the defendant's conviction could not stand under the act because the Court had not construed the obscenity statute, in accordance with *Miller,* to proscribe such conduct. The Court then proceeded to decline the request to so construe the statute, stating, "[w]e are divided as to whether such statutes can properly be construed by us without further legislative expression as proscribing the dissemination of 'obscene' material to consenting adults." *People v Bloss, supra,* p 81. As a result, for over three years Michigan has had no effective obscenity statute

applicable to consenting adults. Nevertheless, and despite this Court's notice, the Legislature has chosen to abide this situation.

The legislative inaction over such a sustained period weighs heavily on any interpretation of legislative intent. See *Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 520; 158 NW2d 473 (1968). This long period of legislative inaction contrasts not only with the situation in other jurisdictions in which courts have chosen to "authoritatively construe" their obscenity statutes, the majority of such decisions following closely on the heels of the *Miller* decision and before the Legislature had any substantial period in which to act, but, also, with the Legislature's own usual promptness in responding to court decisions affecting the constitutionality of its obscenity statutes. Indeed, MCL 750.343a; MSA 28.575(1) was enacted within less than a year of the invalidation of the state's previous obscenity statute in *Butler v Michigan,* 352 US 380; 77 S Ct 524; 1 L Ed 2d 412 (1957). Similarly, the amendments to the criminal obscenity statute contained in 1964 PA 143, § 1, effective August 28, were a direct response to the Court's decision in *People v Villano,* 369 Mich 428; 120 NW2d 204 (1963), and were enacted shortly after the decision in that case.

The Legislature has enacted a new statute aimed at preventing dissemination of obscene materials to minors, 1978 PA 33. That statute contains precise definitions of the types of sexual conduct the depiction or description of which may be deemed obscene. Its passage demonstrates that the Legislature is not at a loss for innovative responses to the problems posed by the decision in *Miller.* The new statute, however, so clearly designed to avoid any constitutional problems exist-

ing under former MCL 750.343e; MSA 25.575(5),
applies *only* to minors. The legislative inaction
with respect to the regulation of sexually oriented
materials disseminated to consenting adults as-
sumes a telling significance in light of the specifici-
ty which the Legislature has demonstrated in its
effort to devise a constitutional regulation of ob-
scenity with respect to minors.[2]

Whatever the legislative policy may once have
been, the Legislature's intent as presently mani-
fested is sufficiently ambiguous to warn this Court
against trying to rescue the statute by reluctantly
adopting an interpretation allegedly mandated by
a clear legislative purpose. The Court's decision
supplies a legislative intent which the Legislature
itself was unwilling to express despite this Court's
advice and our previous refusal to construe the
statute with respect to consenting adults.

II

Running through the majority's attempt to sal-
vage this obscenity statute is the concept that this
Court has a duty to "construe" it, to whatever
extent necessary, so that it conforms to minimal
constitutional requirements. The majority's rea-
soning derives from this Court's opinion in *People
v Bricker,* 389 Mich 524; 208 NW2d 172 (1973).

*Bricker* involved the issue of the constitutional-
ity of Michigan's abortion statute, which was en-
acted to "prohibit all abortions except those re-
quired to preserve the health of the mother". *Id.,* p
529. The constitutionality of the statute was ques-
tioned as a result of the United States Supreme
Court's decision in *Roe v Wade,* 410 US 113; 93 S

---

[2] We express no view as to the constitutionality of 1978 PA 33, MCL
722.671 *et seq.;* MSA 25.254(1) *et seq.*

Ct 705; 35 L Ed 2d 147 (1973), where it was held
that first trimester abortions authorized by the
attending physician could not constitutionally be
prohibited.

The only question involved in *Bricker* was
whether the statute should be interpreted to in-
clude *Roe's* first trimester exception. The Court
held that when faced with two competing interpre-
tations, one constitutional and the other unconsti-
tutional, it was under a duty to preserve the
constitutionality of the statute by choosing the
constitutional interpretation.

We are convinced that *Bricker* is inapplicable. It
is one thing to judicially construe legislation that
legitimately and by fair inference admits of but
two constructions, one constitutional and the other
not. We will rightly opt for the former. But that is
not what we are asked to do in this case.

The United States Supreme Court in *Miller* has
determined that statutes regulating sexually ori-
ented material must specifically define the sexual
conduct depicted or described in "obscene" materi-
als. The Michigan obscenity statute does not enu-
merate specific kinds of sexual conduct, but pro-
scribes obscene depiction or description of *all* sex-
ual conduct. In an effort to save the statute, the
majority chooses which depictions or descriptions
of various types of sexual conduct are to be read
into the statute and does so without legislative
guidance. The danger of such an exercise of judi-
cial power is suggested in *United States v Reese,*
92 US 214, 221; 23 L Ed 563 (1876):

"We are, therefore, directly called upon to decide
whether a penal statute enacted by Congress, with its
limited powers, which is in general language broad
enough to cover wrongful acts without as well as within
the constitutional jurisdiction, can be limited by judicial

construction so as to make it operate only on that which Congress may rightfully prohibit and punish. * * * The question, then, to be determined, is, whether we can *introduce* words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only.

*"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. * * ** *

"To limit this statute in the manner now asked for would be to make a new law, not to enforce the old one. *This is no part of our duty."* (Emphasis supplied.)

See, also, *Marchetti v United States,* 390 US 39, 58-61; 88 S Ct 697; 19 L Ed 2d 889 (1968).

The majority, on the authority of *Miller, Hamling v United States,* 418 US 87; 94 S Ct 2887; 41 L Ed 2d 590 (1974); *Ward v Illinois,* 431 US 767; 97 S Ct 2085; 52 L Ed 2d 738 (1977), and various state court decisions, adopts what *Miller* suggests were only "a few plain examples of what a state statute could define for regulation", *Miller, supra,* p 25, as part of its definition of obscenity under the statute. Being examples, the *Miller* definitions are not constitutionally mandated nor intended to be binding upon the states' interpretation of their statutes. "We emphasize that it is not our function to propose regulatory schemes for the States." *Id.* Although the United States Supreme Court in *Miller* indicated that states could construe their obscenity statutes along the lines of the *Miller* definitions without violating the Federal Constitution, see *Ward v Illinois, supra,* the Court did not require state courts to follow such a path. That choice is left to each state.

It is unclear why the majority adopts the *Miller* definitions. Although they were approvingly set forth in its decision, it appears the *Miller* Court also gave qualified approval to the obscenity statutes adopted by Hawaii (Hawaii Penal Code, title 37, §§ 1210-1216; 1972 Hawaii Sess Laws, act 9, ch 12, part II, pp 126-129) and Oregon (Or Laws 1971, ch 743, art 29, §§ 255-262). *Miller, supra,* p 24, fn 6. As these statutes appear to be approved by the Court and seem, in their definitions of sexual conduct, to be broader than the Court's examples are, there is no apparent reason to choose the Court's definitions over the definitions in these statutes. Yet the majority does so without articulating the rationale for its decision. See *State v Shreveport News Agency, Inc,* 287 So 2d 464, 472 (La, 1973) (Calogero, J., concurring).

There being no principled basis for choosing between the many and varied constitutionally acceptable definitions of sexual conduct, it is particularly inappropriate for the judiciary to make an unguided, arbitrary choice. The choice should be made by the Legislature and this Court should not usurp its prerogative. This Court should refuse to enforce MCL 750.343a; MSA 28.575(1) until the Legislature complies with the *Miller* mandate and, as it has done with the obscenity statute relating to minors, explicitly defines that sexual conduct which may not be obscenely depicted or described.

LEVIN, J., concurred with KAVANAGH, J.